This is a workmen's compensation case.
The Circuit Court of Madison County denied workmen's compensation benefits to the plaintiff. This denial was based on the court's finding of no employer-employee relationship between the plaintiff's decedent and defendant at the time of the accident resulting in decedent's death. The plaintiff appeals and we affirm.
At the outset, we note that in a workmen's compensation case, this court looks at the record only to determine if the trial court's finding of fact is supported by any legal evidence and if the law has been properly applied to the facts. See NewmanBros., Inc. v. McDowell, Ala.Civ.App., 354 So.2d 1138 (1977),cert. denied, Ala., 354 So.2d 1142 (1978); Craig v. DecaturPetroleum Haulers, Inc., Ala.Civ.App., 340 So.2d 1127 (1976),cert. denied, Ala., 340 So.2d 1130 (1977).
With the above in mind, a review of the record reveals the following pertinent facts:
Defendant owned and operated a cotton-hauling brokerage firm in Huntsville. Defendant's business involved the transportation of ginned cotton from storage warehouses to textile mills.
Defendant owned two trucks which were operated by two men known as "employee drivers." Defendant paid all expenses connected with the operation of his two vehicles including maintenance, fuel, and liability insurance. Employee drivers were paid a base rate salary on Friday of each week regardless of whether there was anything to haul. This was in addition to 25% of any hauls which they may have made. When hauling cotton, employee drivers were supposed to call defendant upon arrival at their point of destination to check for further instructions. Employee drivers were required to return to Huntsville immediately after a delivery, unless there was another load to pick up. Lastly, defendant made payroll deductions from the pay checks of employee drivers.
The decedent owned his own truck which he used in hauling cotton and was known as an "owner driver." There were approximately fifteen other "owner drivers" who hauled cotton for the defendant.
The decedent, besides owning his own truck, paid all his expenses including maintenance, fuel, liability insurance, and any additional help used by him in hauling. Decedent was paid on the basis of the loads of cotton he delivered and such compensation was paid at irregular intervals. If no loads were hauled, decedent would not get paid, unlike "employee drivers." Compensation for the hauls was paid by the person who had requested them directly to defendant. Defendant then deducted 10% as his "brokerage fee" and paid 90% of the gross to *Page 988 
the decedent. No tax deductions were taken from this payment.
Furthermore, decedent was not under a duty to contact defendant after a delivery was completed, but usually did so as to secure a "return haul." Decedent also secured return hauls from others on occasion, even during the cotton-hauling season.
The record further indicates decedent was under an obligation to maintain harmonious relationships with the cotton warehouser and its employees when the cotton was loaded on his truck and also with the mill and its employees in the unloading of the cotton. Decedent was also under a duty to protect the cotton from the elements and have it secured on his vehicle. When defendant gave decedent a load to haul, decedent was instructed where to pick up the cotton and what mill to deliver it to. Decedent chose whatever route he wished to proceed by.
Decedent had his own name, address, and telephone number displayed on his vehicle. He filed income tax returns as a sole proprietor, depreciating his equipment and taking business deductions.
On August 7, 1975, while delivering a load of cotton pursuant to this arrangement with defendant, decedent was involved in an accident in North Carolina, which injured decedent. He subsequently died of such injuries. Decedent's wife, plaintiff in this instance, then filed suit in the circuit court seeking benefits under the Workmen's Compensation Act.
As noted above, the trial court found no employer-employee relationship between decedent and defendant and therefore denied benefits under the act. Plaintiff appeals that finding and contends such an employer-employee relationship did in fact exist.
As the supreme court stated in Weeks v. C.L. Dickert LumberCo., 270 Ala. 713, 714, 121 So.2d 894, 895 (1960):
 "This court is committed to the proposition that it is the reserved right of control rather than its actual exercise that furnishes the true test of whether the relationship between the parties is that of an independent contractor or of employer and employee — master and servant . . .
 "For one to be an employee, the other party must retain the right to direct the manner in which the business shall be done, as well as the result to be accomplished or, in other words, not only what shall be done, but how it shall be done. . . ." [Citations omitted.]
In determining whether an employer-employee relationship or that of an independent contractor exists, there are no hard and fast rules which can be used. Each case must depend on its own facts. Ordinarily, no one feature of the relation is determinative, but all must be considered together. See Hudsonv. DuraWear Corp., Ala.Civ.App., 344 So.2d 182 (1977);Birmingham Post Co. v. Sturgeon, 227 Ala. 162, 149 So. 74
(1933).
The principal factors showing right to control are (1) direct evidence of right or exercise of control, (2) method of payment, (3) furnishing of equipment, and (4) the right to fire. See 1B A. Larson, The Law of Workmen's Compensation § 44.00 (1978). As noted above, if the right of control of details goes no further than is necessary to ensure a satisfactory end result, it does not establish employment. SeeWeeks v. Dickert Lumber Co., supra.
The record reveals that there was sufficient evidence to support a finding of no employer-employee relationship. Defendant's control over decedent extended only to ensure a satisfactory end result and did not dictate the details of decedent's work. The mere fact that defendant instructed decedent to keep harmonious relations with cotton suppliers and millers does not establish such control as to be deemed employment. The same holds true as concerns decedent covering and uncovering his loads in that these measures were aimed at ensuring a satisfactory end result.
The record further reveals that decedent was paid only when he had made a haul. "Employee drivers" were paid regardless of whether they had made any hauls. Decedent *Page 989 
also received 90% of the gross for each haul while employee drivers received only 25%.
As noted above, decedent owned his own truck, whereas defendant furnished trucks for employee drivers to haul cotton. This factor also points to the absence of an employer-employee relationship as does the method of payment.
The record supports a finding that defendant did not have the right to fire decedent. Defendant could refuse to give decedent loads to haul which differs from the alleged right to fire. The right to refuse loads worked both ways in that decedent could refuse to take loads the same as defendant could refuse to give loads. This is consistent with the manner of obtaining loads in that decedent would have to call in or come by defendant's business each morning in order to be assigned a load. Further, even if decedent hauled a load for defendant, he could arrange his own return load if he desired.
Viewing the above factors, in conjunction with the "any evidence" rule as stated in Newman Bros., Inc., supra, we cannot say the trial court erred in finding the absence of an employer-employee relationship so as to entitle plaintiff to workmen's compensation benefits.
Plaintiff, through able counsel in a well written and enlightening brief, urges this court to adopt the "relative nature of the work" test to determine the existence of an employer-employee relationship. See 1B A. Larson, The Law ofWorkmen's Compensation § 43.50, et seq. Specifically, plaintiff contends the functions performed by the employer and employee are to be examined and analyzed in relation to one another. After doing so, if it is found that the work being done is an integral part of the regular business of the employer, and the worker does not furnish an independent business service, then the "modern tendency is to find employment."
As seen from the above, there is evidence to support the conclusion that the decedent was furnishing an independent business service.
To summarize, the evidence supports the finding by the trial court that the relationship between defendant and decedent was that of independent contractor and not that of employer-employee. By virtue of this, the court properly denied plaintiff workmen's compensation benefits.
This case is due to be affirmed.
AFFIRMED.
WRIGHT, P.J., and BRADLEY, J., concur.