The defendants, Superskate, Inc., and Jack C. Collins, appeal from a judgment entered on a jury verdict awarding $85,000 to the minor plaintiff, Candice Brooke Nolen, who brought the action by and through her mother, Angela K. Miller, as next friend.[1] Nolen was injured at the skating rink owned by Superskate; Collins is the president, a stockholder, and an employee of Superskate. Collins and Superskate argue that the trial court erred in denying their motions for summary judgment, their motions for directed verdict or J.N.O.V., and their requested jury charges, principally the charge on the defense of assumption of the risk.
While skating at Superskate's rink, Nolen was bumped from behind and fell, and the person who bumped her fell on her. Her left leg was broken, and the adult who had fallen on her carried her off the skating area. The evidence from that point is conflicting, but would support a finding that Collins either picked her up and carried her back onto the rink or stood her up and pushed her onto the rink, saying her injury was "nothing but a bruise." She fell down again, crying and screaming, and somebody helped her off the floor again. She was then placed on some steps leading to the control booth, where Collins was working. According to her evidence, she asked Collins if she could call her mother, but he said no, that she was only bruised. At some point a patron of the rink gave a quarter to Nolen's eight-year-old stepsister, Meeka Miller, who telephoned Mrs. Miller. Nolen's stepfather, Mr. Miller, then drove to the rink, came inside, picked up Nolen, carried her to his automobile, and took her to a hospital.
Superskate and Collins argue that their motions for summary judgment were due to be granted because the affidavits and other evidence they submitted in support of those motions made a prima facie showing that there was no genuine issue as to any material fact and that they were entitled to a judgment as a matter of law. Rule 56(c)(3), Ala.R.Civ.P. They argue that the materials submitted in opposition to the motion did not rebut this showing by presenting evidence creating a genuine issue of material fact.
The parties do not cite, and our research has not disclosed, a case in which this Court has separately addressed the denial of a summary judgment motion after a trial court has denied motions for directed verdict and J.N.O.V. and has then entered a judgment on a jury verdict for the nonmoving party. Ordinarily, any issue as to the denial of the summary judgment motion would be moot, because the sufficiency of the evidence at trial would be the significant question on appeal. However, a movant who conclusively establishes that a summary judgment is appropriate, with no pertinent opposition from the nonmovant, is "entitled to a judgment as a matter of law," and "[t]he judgment sought shall be rendered forthwith," Rule 56(c)(3), Ala.R.Civ.P. The denial of a summary judgment is not appealable, and if the trial court refuses to issue the statement provided for by Rule 5(a), Ala.R.App.P. (relating to appeals by permission), the movant has no opportunity for review other than an appeal after an adverse judgment. Therefore, it is at least arguable that the later appeal could challenge the correctness of the denial of a summary judgment.
Furthermore, in this case, the plaintiffs' evidence in opposition to the summary judgment motions was somewhat different from their evidence at trial, so the question of sufficiency differs at the two stages. To say that a judgment should have been entered against the plaintiff for failure at an early stage to produce sufficient probative evidence may be an exaltation of form over substance where the plaintiff has produced sufficient evidence at trial. On the other hand, if it appears that the plaintiff has changed testimony or other evidence based *Page 234 
on experience gained during the proceedings on the motion for summary judgment, the defendant may have a legitimate argument that the case should never have gone to trial.[2]
Interestingly, the two principal treatises on the Federal Rules of Civil Procedure give conflicting answers to this question. Professors Wright, Miller, and Kane state that, after a judgment following a trial on the merits, "the party who unsuccessfully sought summary judgment may argue that the trial court's denial of the Rule 56 motion was erroneous." 10 Charles A. Wright, et al., Federal Practice and Procedure § 2715 (2d ed. 1983) (citations omitted). Professor Moore, however, states the following in text added to the 1993 supplement, based onJarrett v. Epperly, 896 F.2d 1013 (6th Cir. 1990):
 "Although normally interlocutory orders merge into the final judgment and are then appealable, it has been held that an interlocutory denial of summary judgment will not serve as a ground of appeal after the movant loses a full trial on the merits. This is so because it would be unjust for the court of appeals to deprive a party of a judgment rendered after a full trial based upon the appellate court's examination of the evidence presented at the time of the motion."
Vol. 6 pt. 2 James W. Moore, et al., Moore's Federal Practice ¶ 56.21[2] (2d ed. 1988) (text accompanying footnote 10a in 1991-92 supplement).
Upon a proper showing, it might be appropriate to resolve the summary judgment issue separately from the J.N.O.V. issue. Thus, we will not simply hold that the summary judgment issue is moot. We caution that it would be a rare case where this Court would reverse the denial of a summary judgment when the nonmovant has produced sufficient evidence at trial to survive a directed verdict motion.
Here, the plaintiffs' evidence in opposition to the summary judgment motion consisted of an affidavit from Nolen and the plaintiffs' answers to interrogatories, which were answered by Mrs. Miller with assistance from Nolen, Meeka Miller, and Dax Lancaster, their eight-year-old cousin who was with them at the rink. The essential difference from the later evidence is that Nolen stated initially that another Superskate employee, not Collins, pushed her back onto the rink after she was first injured, whereas she testified at trial that it was Collins who did this. However, this was not the only evidence that would support a judgment against Collins individually. Nolen consistently stated that, after she was brought off the rink the second time, Collins refused to allow her to telephone her mother. This evidence would support a claim that Collins negligently, wantonly, or willfully caused or contributed to her injury and suffering by delaying her access to medical treatment and relief from her pain. Moreover, the interrogatories asked what the plaintiffs claimed Collins did that caused or contributed to Nolen's injuries, and the plaintiffs answered that he "was in direct control and management" of the rink at the time of the accident and they made reference to the other answers to interrogatories. Thus, the pre-trial failure to name Collins as the person who pushed Nolen back onto the floor does not require a reversal of the denial of his motion for summary judgment. We see no material difference as to Superskate between the pre-trial evidence and that presented at trial, so we shall not treat the summary judgment issue separately as to Superskate.
The defendants' principal argument as to the sufficiency of the evidence is that Nolen did not show any wrongful conduct on their part that caused the break to her leg. The complaint alleged that the defendants operated the rink "in a negligent, wanton, willful, grossly negligent, and reckless manner by selling admissions to such large numbers of paying customers that [the] facility *Page 235 
became overcrowded and unsafe for the use of the facilities by Plaintiff Candice Brooke Nolen and other paying customers," that Nolen was "run over by another paying customer with great force," and that Nolen's injuries were a direct and proximate result of the defendants' wrongful conduct. In a second count, the plaintiffs alleged the events subsequent to Nolen's fall and claimed damages based on the tort of outrage. The trial court entered a directed verdict on the outrage count, but the subsequent events were admitted without limitation to the outrage count. We deem the first count to have been amended by consent to include under the count for negligence or wantonness the allegations regarding Nolen's being placed back onto the skating floor and Collins's refusal to let her telephone her mother. Rule 15(b), Ala.R.Civ.P.
The parties stipulated that Nolen's treating physician, Dr. Buckley, if called to testify, would say that the broken leg was caused by the initial fall and was not contributed to by the events alleged to have occurred subsequently:
 "The parties stipulate and agree that if Dr. Buckley were called to testify in this case, he would testify that Brooke sustained the fracture of her femur when she fell and the adult individual fell on top of her, causing pressure and stress to the side of her left leg. And that the subsequent act of placing her back on the floor, if it in fact occurred, did not contribute to the break or the fracture in any way."
The defendants presented evidence that the rink was less crowded on the night of Nolen's injury than it usually was. They argued strenuously at trial and again here that mere overcrowding in a skating rink or similar amusement facility is not a basis for imposing liability without evidence of failure to exercise proper crowd control, citing Cigan v. ArcadiaGarden Corp., 323 Ill. App. 170, 55 N.E.2d 290 (1944). They say that all the evidence indicates that their efforts at crowd control were adequate. Further, they say, they owe no duty to protect skaters from the risks inherent in skating, citingBerman v. Radnor Rolls, Inc., 374 Pa. Super. 118, 542 A.2d 525
(1988); and Ridge v. Kladnick, 42 Wn. App. 785, 713 P.2d 1131
(1986). See, generally, Annot., Liability of Owner or Operatorof Skating Rink for Injury to Patron, 24 A.L.R.3d 911 (1969); 4 Am.Jur.2d Amusements and Exhibitions § 83, "Skating Rinks" (1962). See also Baker v. Merry-Go-Round Roller Rink, Inc.,537 So.2d 1 (Ala. 1988).
We agree that the only evidence here of negligence causing or contributing to the initial fall would be evidence that the defendants sold too many admission tickets, so that the rink was overcrowded to the point that skating was unsafe. The plaintiffs presented evidence that the rink was overcrowded, through the testimony of Nolen, Meeka Miller, Dax Lancaster, and Michael Hawthorne, another patron who witnessed some of the events surrounding Nolen's injury. Nolen and Lancaster both testified that it was so crowded that one could not move without bumping into another person. All four witnesses testified that it was more crowded than usual and too crowded to skate easily or well.
The defendants introduced the testimony of several witnesses, employees of Superskate, who said that the rink was less crowded than usual on a Friday night and that they did not see any problems on the floor or even see Nolen's fall. They presented evidence that they were monitoring and controlling the crowd properly, such as by enforcing rules against reckless skating or excessive speed, and even some of the plaintiffs' evidence would support such a conclusion.
Under the circumstances of this case, however, we decline to reverse the judgment on this basis. We decline to hold, as the Appellate Court of Illinois did in Cigan, that overcrowding alone is not evidence of negligence. At some stage of crowding, those managing a skating rink would have a duty to prevent more people from coming onto the rink or to remove some from the rink so that the skaters might skate safely. Allowing crowding might not be negligence, but allowing over crowding could be negligence. The plaintiffs' evidence that the rink was too crowded for a person to skate without touching others is substantial evidence of negligence. The trial court directed a verdict as *Page 236 
to wantonness on this aspect of the claim, and no issue is presented here as to wantonness in regard to the question of overcrowding.
Even if the evidence of crowding, without more, might not be substantial evidence of negligence, the evidence of the defendants' conduct after the initial injury is certainly sufficient to support the submission of the case to the jury. The stipulation that the doctor would testify that the injury was caused by the initial fall and not by the subsequent acts tends to give the appearance that all of Nolen's injuries were caused by the initial fall and that her recovery would thus depend on proving the initial negligence. Nolen stated, however, that the pain was worse after she fell when pushed back onto the floor than it was after the initial fall. The evidence that Collins intimidated the children and prevented them from calling Mrs. Miller for some time supports a finding that he at least aggravated her pain and suffering by this willful conduct.
The verdict was divided as $25,000 in past damages, $25,000 in future damages, and $35,000 in punitive damages. Although the future damages are arguably related only to the initial injury, we decline to reverse the judgment on this basis when the evidence of overcrowding can be evidence of negligence and when the remainder of the verdict is amply supported by the evidence. The defendants argue that there was no clear and convincing evidence of wanton or willful conduct, pointing to the denials by Collins and others that the alleged subsequent acts occurred and to equivocal or self-contradictory testimony by the plaintiffs' witnesses. They argue that, therefore, punitive damages may not be awarded, citing Ala. Code 1975, § 6-11-20(a), and Berry v. Fife, 590 So.2d 884 (Ala. 1991). After reviewing the record, however, we hold that the plaintiffs did present clear and convincing evidence of willful or wanton conduct. The mere fact that the defendants contradict the plaintiffs cannot preclude a finding of clear and convincing evidence. Although there are some contradictions in the children's testimony, their evidence, when viewed as a whole, is sufficiently consistent and credible to constitute clear and convincing evidence. Some equivocation or inconsistency in the testimony of children of tender years is not unusual, and it does not extend in this case to the point that their evidence cannot be taken as clear and convincing.
For the foregoing reasons, the trial court did not err in denying the defendants' motions for directed verdicts.
Superskate argues that the trial court erred in denying its requested jury instruction number 12: "Overcrowding of a skating rink alone is not evidence of negligence." Because, as we hold above, allowing a skating rink to become overcrowded can amount to negligence, this instruction does not accurately state the law.
Both Superskate and Collins argue that the trial court erred in not instructing the jury on the defense of assumption of the risk as to Nolen. The trial court did instruct the jury on assumption of the risk and contributory negligence as to Mrs. Miller's claims. Nolen has not cited a case discussing assumption of the risk as a defense to a claim by an eight-year-old child, but argues that the cases discussing the application of contributory negligence to children are analogous.
 "A child between the ages of 7 and 14 is prima facie deemed incapable of contributory negligence. King v. South, 352 So.2d 1346 (Ala. 1977), citing Alabama Power Co. v. Taylor, 293 Ala. 484, 306 So.2d 236 (1975). However, a child between the ages of 7 and 14 may be shown by evidence to be capable of contributory negligence by evidence that he possesses that discretion, intelligence, and sensitivity to danger that the ordinary 14-year-old possesses. Fletcher v. Hale, 548 So.2d 135 (Ala. 1989).
 " '. . . To apply [contributory negligence] to a child, the Court must examine the following elements: (1) the intelligence of the child; (2) the capacity of the child to understand the potential danger of the hazard; (3) the child's actual knowledge of the danger; (4) the child's ability to exercise discretion; (5) the educational level of the child; (6) the maturity of the child; and (7) the age of *Page 237 
the child. See, Lyle v. Bouler, 547 So.2d 506
(Ala. 1989).'
 "Jones v. Power Cleaning Contractors, 551 So.2d 996, 999 (Ala. 1989)."
Works v. Allstate Indem. Co., 594 So.2d 60, 63 (Ala. 1992);Savage Industries v. Duke, 598 So.2d 856 (Ala. 1992).
 "The assumption of the risk defense is not based on the plaintiff's fault or negligent conduct. . . . The plaintiff must know that a risk is present and must understand its nature. . . . His choice to incur the risk must be free and voluntary. . ..
 "Assumption of the risk proceeds from the injured person's actual awareness of the risk. . . . Furthermore, with assumption of the risk the plaintiff's state of mind is determined by the subjective standard, whereas with contributory negligence the court uses the objective standard. . . . The factfinder looks at whether the plaintiff knew of the risk, not whether he should have known of it."
McIsaac v. Monte Carlo Club, Inc., 587 So.2d 320, 324 (Ala. 1991) (citations omitted); McClendon v. Mountain Top IndoorFlea Market, 601 So.2d 957, 960 (Ala. 1992).
We have found no Alabama cases directly addressing the availability of the defense of assumption of the risk to a claim by a minor. However, in Fox v. Hollar Co., 576 So.2d 223
(Ala. 1991), the plaintiff argued that the guest statute, Ala. Code 1975, § 32-1-2, was inapplicable to a claim by a minor under 14 years of age:
 "Fox, in her brief, analogizes the concept of a minor's consenting to become a guest under the guest statute to the doctrine of assumption of the risk. She then cites to us a case from another jurisdiction holding that there is a rebuttable presumption that a child between the ages of 7 and 14 is incapable of exercising care and prudence and further that a child under the age of 14 is incapable of knowingly and voluntarily accepting an invitation to become a guest in an automobile so as to subject himself to a gross negligence or wantonness rule. See Smith v. Kauffman, 212 Va. 181, 183 S.E.2d 190 (1971)."
576 So.2d at 226-27. The Court rejected the argument, based on our earlier cases holding that the question whether a child under 14 is subject to the guest statute is a question for the factfinder.
We hold that the question whether a child plaintiff is capable of assumption of the risk is ordinarily a question for the factfinder. However, there is an even higher burden on the defendant in regard to assumption of the risk than in the case of contributory negligence, because the defendant attempting to show assumption of the risk must show that the child subjectively appreciated the danger and voluntarily undertook it. Where the defendants have not made such a showing, the trial court properly would not submit the question to the jury. Collins and Superskate point to no evidence from which we can conclude that the trial court erred in denying their request for an instruction on assumption of the risk as to Nolen's claim. The evidence to which they point in support of this defense tends only to show that Nolen considered herself a good skater and had been skating on a number of previous occasions. It does not tend to show that she consciously appreciated the dangers of skating or voluntarily undertook them; it certainly does not tend to show her maturity, intelligence, capacity, discretion, or the other factors that the defendant has the burden of showing in order to overcome the presumption of incapacity. Therefore, there is no showing of error in the denial of the requested instruction.
AFFIRMED.
HORNSBY, C.J., and HOUSTON, KENNEDY and COOK, JJ., concur.
[1] Mrs. Miller also sued individually, but the jury returned a verdict in favor of the defendants on her claim. We shall occasionally refer to "the plaintiffs" in regard to the proceedings in the trial court, even though Nolen, through Mrs. Miller, is the only appellee.
[2] These remarks would also apply where the plaintiff, as movant, made a prima facie showing that the plaintiff was entitled to a judgment as a matter of law, and the defendant did not produce a defense in opposition to the summary judgment motion but did produce evidence in defense during trial. Such a situation is even less common, however, than the case where the defendant is the movant. *Page 238