689 So.2d 781 (1996)
RAST CONSTRUCTION, INC.
v.
Ada PETERS, as administratrix of the Estate of Donnie Richardson, deceased.
1931800.
Supreme Court of Alabama.
September 20, 1996.
Rehearing Denied February 14, 1997.
*782 Initial briefs filed by Charles E. Sharp, Joel A. Williams, and Turner B. Williams of Sadler, Sullivan, Herring & Sharp, P.C., Birmingham, later briefs filed by Charles E. Sharp, Turner B. Williams and J. Clinton Pittman of Sadler, Sullivan, Sharp, Fishburne & Van Tassell, P.C., Birmingham, for Appellant.
J. Gusty Yearout, William R. Myers, P. Mark Petro, and Deborah S. Braden of Yearout, Myers & Traylor, P.C., Birmingham, for Appellee.
William D. Coleman and C. Clay Torbert III of Capell, Howard, Knabe & Cobbs, P.A., Montgomery, for Amicus Curiae Alabama Branch, Associated General Contractors of America, Inc., in support of Appellant.
T. W. Thagard, Jr., of Balch & Bingham, Montgomery, for Amicus Curiae Business Council of Alabama, in support of Appellant.
PER CURIAM.
Ada Peters's son, Donnie Richardson, was killed while working on a Rast Construction, Inc., site in Jefferson County. As administratrix of her son's estate, Peters filed a wrongful death action against Rast, alleging that negligence, wantonness, or willfulness on Rast's part had caused Richardson's death. A jury returned a verdict for Peters, and the circuit court entered judgment on that verdict. Rast appeals.
Rast, a general contractor, was awarded a contract by the State of Alabama to repair a hillside and install a 30-inch metal drainage pipe at a site in Vestavia Hills. For this work at the Vestavia Hills site, Rast subcontracted with Ed Gingrich to weld pipe sections that were being installed by Rast. Gingrich informed Rast that he would require assistance in performing the job and was told by Rast that Rast would provide someone to assist him.
On the day of the accident, Gingrich was welding three sections of the pipe. Rast laborer employee Tyrone Nation was instructed by site supervisor Robert Culpepper and/or superintendent Daniel Rast, to assist Gingrich. After helping Gingrich for a while, Nation was relieved by Richardson, so that Nation could take a break. The duties performed by Richardson were handing Gingrich welding rods, helping clamp and line the pipes, and grounding his lead.
Culpepper and Daniel Rast testified that they never directly instructed Richardson to relieve Nation, but that it was common practice among employees to help one another. Within 30 minutes after Richardson had relieved Nation, a portion of the ground caved, causing a pipe to fall on Richardson. He was crushed to death.
After Richardson died, Peters's original attorney contacted Rast and requested that it have its workers' compensation insurance carrier contact him. The record does not reflect that Rast responded to the request. However, Rast and/or its workers' compensation carrier did pay $500 for a headstone, $4,900 in medical bills, and $4,760 in funeral expenses; it was reimbursed $1,000 by its workers' compensation carrier. Richardson's final paycheck was paid to Peters, and she received life insurance proceeds from a co-pay group plan provided for Rast employees.
Rast argues that the only remedy available to Peters was through a workers' compensation action pursuant to Ala.Code 1975, § 25-5-53, because, Rast argues, Richardson was an employee of Rast at the time of the accident. Rast argues that because it was Richardson's employer, it enjoys the benefit of the exclusivity provisions of § 25-5-53. Rast claims that its payment of the medical and funeral benefits, coupled with the letter from Peters's original attorney, further support its position that Peters pursued a workers' compensation claim on behalf of her son, thereby acknowledging Rast as his employer and, according to Rast, barring her common law actions.
*783 Peters argues that the fact that Rast paid medical and funeral expenses does not prove a workers' compensation claim. As a basis for her argument, she says Rast never responded to the letter of her original attorney and also that she was not fully aware of the surrounding circumstances at the job site at the time Richardson was killed. Bobby Rast, a part owner of Rast Construction, told Peters at the funeral that he would take care of the funeral and medical bills. Peters says that, in her state of grief she had no reason to ascertain that Bobby Rast really meant that Rast's workers' compensation carrier would be paying those bills. The fact that these bills were paid directly to who they were owed (and not to Richardson's estate) is also part of Peters's argument that she would not have known that she was making a workers' compensation claim. Richardson's estate never received any of the money used to pay the funeral and medical bills. Peters claims that Richardson's estate was entitled to these payments and, therefore, that Peters is not estopped from recovering from Rast under common law theories.
Richardson was paid directly by Rast, and Gingrich did not pay or reimburse Rast for Richardson's wages. Rast paid workers' compensation premiums for Richardson. Gingrich did not assign Richardson to assist him. Different Rast employees helped Gingrich at various times. The record indicates that at the time of the accident Rast supervisors had the right to hire and fire Richardson. Because of these factors, Rast claims it never relinquished control of Richardson to Gingrich as a "special employee." A shift to "special employee" can leave a previous employer open to civil liability outside the exclusive remedy of § 25-5-53. See, Terry v. Read Steel Products, 430 So.2d 862 (Ala.1983). In Terry, we set out a three-part test to determine the existence of "special employee" status:
"`When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if
"`(a) the employee has made a contract of hire, expressed or implied, with the special employer;
"`(b) the work being done is essentially that of the special employer; and
"`(c) the special employer has the right to control the details of the work.
"`When all three of the above conditions are satisfied in relation to both employers, both employers are liable for workmen's compensation....'"
430 So.2d at 865, quoting 1C A. Larson, The Law of Workmen's Compensation, § 48 (1980).
Peters points to the following factors, which she says support a conclusion that Richardson was the "special employee" of Gingrich at the time of the accident: 1) Rast did not employ a welder; 2) Gingrich was hired to weld at the job site; 3) Welding pipe is at a minimum, a two-person task; 4) Gingrich asked Daniel Rast if he needed to bring an assistant, but Rast told him he did not need to and that one would be provided by Rast; 5) Richardson's tasks for Rast had nothing to do with welding; 6) Richardson, Peters argues, was under the control of Gingrich when the accident occurred. Peters argues that the facts of the case suggest that Richardson left Rast's employment and became a "special employee" of Gingrich, and that, therefore, Rast cannot rely on the exclusive remedy of § 25-5-53. Peters asserts that the evidence was presented to a competent jury and she argues that its decision should not be disturbed.
It is well established that in order for someone to be considered the "special employee" of an employer, the three-part test set out in Terry must be met with substantial evidence. There is no substantial evidence in this case to prove that Richardson consented to an employer-employee relationship with Gingrich. Even if an employee of one person enters the service of another at the command and direction of his master, a new relationship is not necessarily created. State Farm Mutual Automobile Ins. Co. v. Vails, 278 Ala. 266, 177 So.2d 821 (1965). Even though Richardson was not directly instructed by Rast supervisors to help Gingrich, the language in Vails points to the fact that it is not easy to become the special employee of another. For Richardson to be *784 a "special employee" of Gingrich, there must be a consensual relationship between Richardson and Gingrich sufficient to create a new and separate employer-employee relationship. It is unreasonable to presume that by Richardson's taking over for a fellow employee for 30 minutes, with his Rast supervisors on hand, he and Gingrich formed a consensual relationship and contract for hire. An inference exists that an employee remains in the employ of his general employer, even if rendering service for another, as long as he is performing the business of his general employer. Standard Oil Co. v. Anderson, 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480 (1909). The record indicates that Richardson was doing only what was normal and customary for Rast employees on Rast job sites.
Because Peters failed to meet the required elements in the three-part test set out in Terry, 430 So.2d at 865, the record indicates no contract of employment, expressed or implied, existed between Richardson and Gingrich. Also, Peters did not meet the burden of providing substantial evidence that Rast gave up the right to control the details of Richardson's work as would be required by Terry, 430 So.2d at 865, for Gingrich to be Richardson's special employer. The right of control is a reserved right, whether exercised or not, over an employee. Martin v. Anniston Foundry Co., 259 Ala. 633, 68 So.2d 323 (1953). None of the facts indicates that Rast could not fire Richardson or direct his work. Peters argues that Gingrich instructed Richardson to "hand me welding rods, ground my lead," etc., and that his doing so made Richardson Gingrich's special employee; this evidence is not persuasive, and it does not constitute substantial evidence that Rast gave up its right of control over Richardson.
Where the evidence did not clearly establish who the employer was, this Court has looked to the duration of employment with a borrowing employer, the service to be rendered, and who is paying the employee, as considerations in determining an employer-employee relationship. Id. We look to duration as a measure of whether it could be reasonably presumed that the employee would have time to understand and appreciate the risks of his employment. Gaut v. Medrano, 630 So.2d 362 (Ala.1993), citing Vanterpool v. Hess Oil V.I. Corp., 766 F.2d 117 (3d Cir.1985). The amount of time Richardson spent helping Gingrich is not in itself controlling on the question of who Richardson's employer was; nevertheless, that factor, taken with all the other factors in this case, compels us to conclude that a reasonable person could not find as a fact that Richardson had become a "special employee" of Gingrich.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, SHORES, and COOK, JJ., concur.
HOUSTON, J., concurs in the result.
KENNEDY, J., dissents.
KENNEDY, Justice (dissenting).
The trial court properly denied Rast Construction Company's motion for a summary judgment, and Rast did not move for a judgment notwithstanding the verdict. It cannot now challenge the sufficiency of the evidence regarding whether Donnie Richardson was a "special employee" of subcontractor Ed Gingrich, after a jury found that he was and rendered a verdict accordingly. Therefore, I must dissent.
Procedurally, the case went as follows: On July 19, 1991, Peters sued Rast, alleging that it had wrongfully caused the death of Richardson. Rast answered and subsequently moved for a summary judgment, which the court denied. Rast asked to be allowed to take an interlocutory appeal of the denial of summary judgment; its request was denied.
At the close of the all the evidence, Rast moved for a directed verdict, which was denied. The jury rendered a verdict for Peters. It is undisputed that Rast did not move for a judgment notwithstanding the verdict.
Rast first argues that denial of its motion for summary judgment was improper and should be reversed on appeal. Generally, any issue as to the denial of a summary judgment would be moot on appeal because the sufficiency of the evidence would be the *785 significant question on appeal. Superskate, Inc. v. Nolen, 641 So.2d 231 (Ala.1994).
"`Although normally interlocutory orders merge into the final judgment and are then appealable, it has been held that an interlocutory denial of summary judgment will not serve as a ground of appeal after the movant loses a full trial on the merits. This is so because it would be unjust for the [appellate court] to deprive a party of a judgment rendered after a full trial based upon the appellate court's examination of the evidence presented at the time of the motion.'"
Superskate, 641 So.2d at 234, citing Jarrett v. Epperly, 896 F.2d 1013 (6th Cir.1990), and quoting Vol. 6, pt. 2, James W. Moore et al., Moore's Federal Practice. ¶ 56.21[2] (2d ed. 1988, 1991-92 supp.) "We caution that it would be a rare case where this Court would reverse the denial of a summary judgment when the nonmovant has produced sufficient evidence at trial to survive a directed verdict motion." Superskate, 641 So.2d at 234.
In its summary judgment motion, Rast argued that Richardson's exclusive remedy in this case would have been workers' compensation benefits, relying on § 25-5-53, Ala. Code 1975.[1] Rast argued that Richardson could not have pursued a common law negligence claim against it, because, it argued, he was not a special employee of Gingrich and, therefore, Rast was still Richardson's employer at the time of the accident that caused his death. Because, according to Rast, Richardson was still its employee, his only remedy would have been workers' compensation benefits.
The trial court properly denied Rast's summary judgment motion, because there was a genuine issue of material fact to be decided. The facts were disputed as to whether Richardson, at the time of the accident, was an employee of Gingrich; therefore, Rast was not entitled to a judgment as a matter of law.
Peters presented substantial evidence indicating that Richardson was a special employee of Gingrich, under the three-part test set out in Terry v. Read Steel Products, 430 So.2d 862 (Ala.1983). Under Terry, when a general employer lends an employee to a special employer, the special employer becomes liable for workers' compensation only if the employee has made an express or implied contract with the special employer, the work being done is essentially that of the special employer, and the special employer has the right to control the details of the work.
In opposition to Rast's motion for summary judgment, Peters presented the following evidence: Rast hired Gingrich to weld at the job site. (C.R.296.) Welding pipe, according to Gingrich, requires at least two people. (C.R.297-98.) Gingrich could not do the welding job alone. (C.R.297.) Rast told Gingrich that it would provide an assistant to help him. (C.R.282.) Richardson's tasks on behalf of Gingrich included following Gingrich's instructions as to whether he needed to turn up the heat on the welder, watching the embankment in the hole where the pipe was being placed, grinding and buffing pieces of the pipe, and keeping the sections of pipe in line in order to weld them together. (C.R. 299-302.) Gingrich stated that Richardson had been helping him for an hour or an hour and a half when the slide occurred that buried Richardson and killed him. (C.R.299.)
Based on the evidence presented by Peters, the trial court properly denied Rast's summary judgment motion, because there was substantial evidence that Richardson and Gingrich had an implied contract, in that Richardson was under Gingrich's control and Gingrich had to have a second person to help him weld, Richardson's work for Gingrich was done solely to aid Gingrich in welding the pipe, and Richardson was being directed by Gingrich and was to follow his instructions while helping him weld the pipe.
The language in Superskate regarding an appeal of the denial of a summary judgment following a jury trial speaks directly to the facts of the present case. Rast's motion for summary judgment was properly denied because there was substantial evidence that Richardson was, at the time of his death, a special employee of Gingrich.
*786 The issue in this case as to whether Richardson was a special employee of Gingrich is not a question of pure law. It is fact question if from the evidence, even though it is undisputed, reasonable persons might draw different conclusions as to whether Richardson was a special employee of Gingrich; such a fact question is for the jury. Only if all reasonable persons would reach the same conclusion would it be a question of law. Quillen v. Quillen, 388 So.2d 985 (Ala.1980).
Rast's next argument is that, because it moved for a directed verdict, it is entitled to a review of the question of the sufficiency of the evidence against it even though it did not move for a judgment notwithstanding the verdict.
In K-Mart Corp. v. Butler, 486 So.2d 426 (Ala.1986), this Court held that where the defendant did not move for a judgment notwithstanding the verdict, although it had moved for a directed verdict at the close of all the evidence, the question of the sufficiency of the plaintiff's evidence could not be considered on appeal. See also, Skipper v. Alabama Farm Bureau Mut. Cas. Ins. Co., 460 So.2d 1270 (Ala.1984); McDonald's Corp. v. Grissom, 402 So.2d 953 (Ala.1981).
In Borger v. Yamaha Int'l Corp., 625 F.2d 390 (2d Cir.1980), the United States Court of Appeals for the Second Circuit held that filing a JNOV motion was "not a useless formality for complying with an appellate [rule]. `In the absence of such a motion, [this Court is] without power to direct the District Court to enter [a] judgment contrary to the one it had permitted to stand.'" 625 F.2d at 395, quoting Cone v. West Virginia Pulp & Paper Co., 330 U.S. 212, 218, 67 S.Ct. 752, 756, 91 L.Ed. 849 (1947).
The United States Supreme Court held in Johnson v. New York, N.H. & H.R.R., 344 U.S. 48, 73 S.Ct. 125, 97 L.Ed. 77 (1952), and Cone, supra, that an appellate court was without power to enter a judgment notwithstanding the verdict absent a timely motion by the losing party after trial. For an appellate court to do that would deprive the trial court of the choice between entering a judgment notwithstanding the verdict and granting a new trial, and the trial court is in a better position to make such a decision, having heard all of the evidence.
In Barnes v. Dale, 530 So.2d 770, 777 (Ala.1988), the Court wrote:
"Except for grounds of `insufficiency of the evidence' in support of a motion for JNOV,... and `weight of the evidence' in support of a motion for a new trial, and other issues on which there has been no previous adverse ruling, such as excessiveness of the verdict, we know of no requirement for a party to renew his objection by way of a post-judgment JNOV motion on a pure question of law that had been previously objected to and ruled upon adversely by the trial court."
Stated differently, one must move for a JNOV in order to be able to challenge the sufficiency or weight of the evidence on appeal.
This Court is not at liberty to vacate a jury's verdict merely because it does not conform to the Court's personal view of the evidence. Senn v. Alabama Gas Corp., 619 So.2d 1320 (Ala.1993). That is what the majority has done in this case. Therefore, I must dissent.
NOTES
[1] Rast made this same argument in an amended motion for summary judgment.