966 So.2d 266 (2006)
LIBERTY MUTUAL INSURANCE COMPANY.
v.
D & G TRUCKING, INC.
2041086.
Court of Civil Appeals of Alabama.
November 17, 2006.
Certiorari Denied April 13, 2007.
Richard B. Garrett of Rushton, Stakely, Johnston & Garrett, P.A., Montgomery, for appellant.
Thomas R. Jones, Jr., and Randal Kevin Davis of Wiggins, Jones, Parsons & Fisher, P.C., Tuscaloosa, for appellee.
Alabama Supreme Court 1060361.
PITTMAN, Judge.
Liberty Mutual Insurance Company appeals from a summary judgment in which the Fayette Circuit Court determined that D & G Trucking, Inc., did not owe additional premiums to Liberty Mutual for workers' compensation insurance coverage. We reverse and remand.
D & G Trucking filed a complaint for a declaratory judgment in the trial court, alleging in pertinent part that it had been insured under a policy of insurance issued by Liberty Mutual that afforded coverage for claims brought against D & G Trucking under workers' compensation laws between April 1, 2003, and April 1, 2004. That policy, D & G Trucking alleged, provided for retrospective premium adjustments based upon Liberty Mutual's determination of, among other things, "remuneration paid or payable during the policy period for . . . all [of D & G Trucking's] officers and employees" and "all other persons engaged in work that could make [Liberty Mutual] liable under Part One (Workers' Compensation Insurance) of th[e] policy." According to D & G Trucking's complaint, Liberty Mutual had issued an endorsement to the policy so as to increase the premium by $64,080 on the stated basis that D & G Trucking had incorrectly categorized a number of its truck drivers as "independent contractors" rather than as employees; that amount was reduced by Liberty Mutual, after further auditing, to $59,718. D & G Trucking requested, among other things, that it be declared not to owe Liberty Mutual that additional premium. Liberty Mutual filed an answer agreeing that a *267 justiciable controversy had been presented and substantially admitting the factual averments of the complaint but denying D & G Trucking's entitlement to a judgment in its favor; Liberty Mutual requested the trial court to determine the correct amount owed by D & G Trucking and to enter a monetary judgment in Liberty Mutual's favor for that amount.
After discovery had taken place, Liberty Mutual filed a motion for a summary judgment that was supported by three deposition transcripts[1] and a brief. Relying principally on Ex parte Curry, 607 So.2d 230 (Ala.1992), Liberty Mutual contended that it was entitled to a judgment as a matter of law in its favor because, it asserted, certain drivers who had operated trucks for D & G Trucking as employees before 2003 had been improperly reclassified as independent contractors. D & G Trucking filed a response to Liberty Mutual's motion in which it contended that "genuine issues of material fact are present in this action in regard to [Liberty Mutual's] contentions related to the independent contractor status of the drivers D & G [Trucking] contracts with"; D & G Trucking also sought a summary judgment in its favor, contending that its drivers were statutorily excluded from the definition of "employee" under Ala.Code 1975, § 25-5-1(4), a portion of the Alabama Workers' Compensation Act ("the Act"), Ala.Code 1975, § 25-5-1 et seq. After a hearing, the trial court denied Liberty Mutual's summary-judgment motion and entered a summary judgment in D & G Trucking's favor, determining not only that § 25-5-1(4) applied but also that D & G Trucking (rather than Liberty Mutual) was entitled to a judgment as a matter of law based on the status of the drivers. Liberty Mutual appealed to the Alabama Supreme Court, which transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975.
Our review of the trial court's summary judgment is based upon the following settled principles of law:
"An appellate court reviews a summary judgment by the same standard the trial court uses in determining whether to grant a summary-judgment motion. Pryor v. Brown & Root USA, Inc., 674 So.2d 45, 47 (Ala.1995); Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988). A summary judgment is appropriate if there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. The movant has the burden of making a prima facie showing that there is no genuine issue of material fact and that he is entitled to a judgment as a matter of law. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). If the moving party makes that prima facie showing, then the burden shifts to the nonmoving party, who then has the burden of presenting substantial evidence creating a genuine issue of material fact. Id. In determining whether the evidence creates a genuine issue of material fact, this court must review the record in the light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wayne J. Griffin Elec., Inc. v. Dunn Constr. Co., 622 So.2d 314 (Ala.1993). Evidence is `substantial' if it is of `such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989)."
*268 Millican v. McKinney, 886 So.2d 841, 843 (Ala.Civ.App.2003).
The dispositive issue, as framed by the parties, is whether there is a genuine issue of material fact concerning whether D & G Trucking's drivers, which were treated as employees until 2003, were thereafter transformed into "independent contractors" so as to reduce the number of employees on D & G Trucking's payroll and, consequently, to reduce its premium liability to Liberty Mutual. Stated another way, and in interrogative form, did the trial court properly foreclose inquiry by the trier of fact into the true relationship between D & G Trucking's drivers and D & G Trucking based upon the evidence appearing in the record? Based upon our review of the pertinent evidence, we must answer that question in the negative.
In White v. Henshaw, 363 So.2d 986 (Ala.Civ.App.1978), this court affirmed a judgment, entered after an ore tenus proceeding, determining a truck driver for a cotton-hauling brokerage to be an independent contractor. In doing so, we noted the settled test of who is an "employee" for purposes of the Act: "`For one to be an employee, the other party must retain the right to direct the manner in which the business shall be done, as well as the result to be accomplished or, in other words, not only what shall be done, but how it shall be done.'" 363 So.2d at 988 (quoting Weeks v. C.L. Dickert Lumber Co., 270 Ala. 713, 714, 121 So.2d 894, 895 (1960)). We further noted that "[t]he principal factors showing right to control are (1) direct evidence of right or exercise of control, (2) method of payment, (3) furnishing of equipment, and (4) the right to fire," although we added the caveat that "if the right of control of details goes no further than is necessary to ensure a satisfactory end result, it does not establish employment." White, 363 So.2d at 988.
The enunciation in White of factors demonstrating a right of control was expressly followed by the Alabama Supreme Court in Ex parte Curry, supra, the primary case upon which Liberty Mutual relies in this appeal. In Ex parte Curry, the Alabama Supreme Court reversed a judgment of this court affirming a trial court's judgment in favor of Interstate Express, Inc. ("Interstate"), a trucking company that had engaged the services of a particular driver (Otis Curry) pursuant to a lease agreement and that had been sued by the driver for an award of workers' compensation benefits under the Act. In doing so, the Supreme Court applied the White factors as follows:
"(1) Direct evidence demonstrates a right of control, or the exercise of control, by Interstate; this evidence consists of the terms of the lease agreement executed between the parties on April 3, 1987, and the testimony given in the case. Curry testified that Interstate controlled what loads he picked up and where he picked them up, as well as the place of delivery of the cargo. The president of Interstate, John Mann, Jr., stated at trial, `[O]nce the lessor accepts the load we tell him where to pick it up, where to deliver it and how to handle that load, as the customer tells us.' On the day of the accident, Curry was transporting dog food from Chicago, Illinois, to Jacksonville, Florida. Curry testified that the cargo was not properly secured, and that he was nervous about hauling it. Curry contacted Interstate and expressed his concern. He was instructed by Interstate to be careful, but to go ahead and take the load to its proper destination. (2) As to the method by which Curry, the injured individual, received payment for his services, the lease agreement provided that Interstate would book a contract to haul cargo and then assign the hauling of the *269 cargo to Curry. Following completion of the task, Interstate would be paid and then Interstate would pay Curry 78% of the proceeds, less any expenses advanced by Interstate. Interstate would retain 22% of the proceeds. Thus, Interstate controlled payment under the lease agreement. (3) As to whether the equipment was furnished by the alleged employer, Interstate, the record indicates that, besides the truck, Interstate provided equipment, fuel/mileage taxes and permits, oversize permits, and Public Service Commission-type permits. In addition, Interstate provided liability, cargo, and `bobtail' insurance. (4) As to whether Curry had the right to terminate, the lease agreement provided that the lease agreement `shall terminate upon 30 [days'] written notice.'"
607 So.2d at 233. After setting forth that analysis, the Supreme Court held that "no reasonable view of the evidence support[ed] the trial court's judgment, and that Curry was, in fact, an employee of Interstate." Id.
Viewed in a light most favorable to Liberty Mutual, the record reveals that in January 2003 or earlier Gerald Rice and David Crawford, the principals of D & G Trucking, discussed with an attorney, an accountant, and an insurance broker the prospect of altering D & G Trucking's relationship with its employee drivers as a means of reducing its workers' compensation insurance costs, which had recently risen to $60,000 per year. According to Rice, after D & G Trucking's attorney had drafted a number of document forms, D & G Trucking informed its drivers that beginning April 1, 2003, D & G Trucking would "go strictly to independent drivers" and that the drivers could "abide by that or seek other employment." The draft agreement that D & G Trucking's drivers were to sign if they wished to continue in D & G Trucking's service contained a number of pertinent provisions, including a term allowing either party to terminate the agreement upon the giving of written notice within a specified time period and a term requiring D & G Trucking to provide a truck and a trailer and authorizing D & G Trucking to supply other ancillary items. D & G Trucking did not, however, alter its "employment application" forms to be completed by new drivers except by scratching out the word "employment" and replacing it with "contract driver."
Rice testified that only limited changes were made in compensation to drivers at the time D & G Trucking began referring to the drivers as independent contractors, i.e., each driver received 23% of the gross payments made by D & G Trucking's customers[2] for a particular haul (plus payments for washing and greasing D & G Trucking's trucks) instead of the 20% to 22% per haul that had been paid while the drivers were deemed employees by D & G Trucking; he added that bonuses are also paid for accident-free driving and for diligence in reporting for duties. Rice admitted that there was "not a big difference" before and after April 2003 in how drivers were dispatched to pick up and deliver loads for D & G Trucking's customers: after D & G Trucking receives a telephone call from a customer desiring a delivery of goods by truck, D & G Trucking personnel decide which driver to dispatch to send on the hauling run and notify that driver by telephone or two-way radio. Once that driver has accepted a load, he or she is not permitted by D & G Trucking to run a personal errand that might involve significant travel beyond the pickup and delivery.
*270 Rice further testified that since April 1, 2003, D & G Trucking had paid for all of the necessary permits and licenses for the trucks operated by its drivers, made all required repairs to those trucks, and paid for all fuel consumed by the trucks. Rice also testified that although D & G Trucking's drivers generally have the right to refuse directions to haul a particular load, he himself would discharge a driver who regularly refused to haul without what he considered to be a "good reason."
Unsurprisingly, the foregoing evidence does not precisely match that assessed by this court in White or by the Supreme Court in Ex parte Curry. However, there is substantial evidence tending to demonstrate an employment relationship in three of the four criteria enunciated in White and applied in Ex parte Curry. First, there is evidence indicating that D & G Trucking placed some controls upon its drivers' ability to deviate from its instructions as to performance of the contracted work. Also, D & G Trucking controlled payments to the drivers at issue in this case in the same manner that Interstate controlled payments to Curry: D & G Trucking assigned particular drivers to particular hauling tasks and, after completion of the task, D & G Trucking paid the driver a percentage of the gross proceeds D & G Trucking received from its customers. There is also substantial evidence indicating that D & G Trucking, like Interstate in Ex parte Curry, provided trucks and operating permits to its drivers, provided liability insurance, and paid for other items (here, gasoline and maintenance costs) necessary to operate the trucks. Finally, as in Ex parte Curry, the pertinent contract form provides that either party could terminate the contract upon written notice, and Rice's testimony indicates that D & G Trucking retained a right to terminate the services of its drivers under certain circumstances.
Our conclusion is not altered by the final sentence of § 25-5-1(4), Ala.Code 1975, which states that under the Act, "in no event shall a common carrier by motor vehicle operating pursuant to a certificate of public convenience and necessity be deemed the `employer' of a leased-operator or owner-operator of a motor vehicle or vehicles under contract to the common carrier" (emphasis added). In this case, D & G Trucking owns the trucks driven by the drivers at issuethe trucks are not "under contract to" D & G Trucking so as to implicate the statute. Compare Alaplex Transp., Inc. v. Rossen, 836 So.2d 901, 906 (Ala.Civ.App.2002) (driver injured while operating a truck leased by a common carrier from an owner-operator could not recover benefits under the Act from the common carrier because the legislature "chose . . . to maintain the immunity afforded under the Act to common carriers in one particular situation, i.e., where common carriers have entered into contracts with owners of motor vehicles for the use of those vehicles" (emphasis added)). That D & G Trucking refers to its contracts with its drivers as "lease contracts" does not transform those contracts into agreements under which D & G Trucking is leasing motor vehicles from other parties, which is the sole area in which the proviso relied upon by D & G Trucking has proper application.
Based upon the foregoing facts and authorities, we conclude that there is substantial evidence creating a genuine issue of material fact concerning whether D & G Trucking's drivers remained "employees" after April 1, 2003, so as to render the trial court's summary judgment in favor of D & G Trucking erroneous. However, although the summary judgment in favor of D & G Trucking must be reversed, we decline Liberty Mutual's request to mandate the entry of a summary judgment in *271 its favor on remand.[3] Notably, the contracts entered into between the drivers and D & G Trucking, although not dispositive in the face of other evidence concerning a reserved right of control, amount to substantial evidence indicating that the drivers at issue were independent contractors such that the trial court properly denied Liberty Mutual's summary-judgment motion. Cf. Tomlinson v. G.E. Capital Dealer Distrib. Fin., Inc., 624 So.2d 565, 567 (Ala.1993) (provision in computer-lease contract disclaiming agency relationship between particular vendor and lessor amounted to "evidence of the lack of an agency relationship," although provision was not conclusive proof as to that issue and would not "preclude [a] finding of agency if there is independent evidence of a retained right of control").
We reverse the trial court's summary judgment and remand the cause for further proceedings consistent with this opinion. As in our recent opinion in Sartin v. Madden, 955 So.2d 1024, 1030-31 (Ala.Civ. App.2006), "our opinion should not be misread to compel any particular conclusion regarding whether an independent-contractor relationship or an employer-employee relationship existed. . . . Rather, we merely direct the trier of fact to weigh the evidence and reach its own conclusion based upon all the evidence."
REVERSED AND REMANDED.
THOMPSON and BRYAN, JJ., concur.
CRAWLEY, P.J., and MURDOCK, J., concur in part and dissent in part, with writings.
CRAWLEY, Presiding Judge, concurring in part and dissenting in part.
I concur in the reversal of the summary judgment in favor of D & G Trucking. However, I dissent from the main opinion's decision to deny Liberty Mutual's request to mandate the entry of a summary judgment in its favor on remand.
In Tomlinson v. G.E. Capital Dealer Distributor Finance, Inc., 624 So.2d 565 (Ala.1993), Tomlinson sued G.E. Capital, alleging claims of fraud and breach of warranty and asserting that G.E. Capital was liable under a respondeat-superior theory for the actions of its agent, CADO. G.E. Capital, contending that it had no agency relationship with CADO, moved for a summary judgment. The trial court entered a summary judgment in favor of G.E. Capital, and Tomlinson appealed. The issue on appeal was whether Tomlinson, the nonmovant, had, in opposition to G.E. Capital's prima facie showing of the absence of an agency relationship, presented substantial evidence of the presence of an agency relationship.
The Alabama Supreme Court held that, because the relevant instrument (a lease between Tomlinson and CADO) declared the absence of an agency relationship between G.E. Capital and CADO and because Tomlinson, the nonmovant, had presented "no independent, substantial *272 evidence" establishing the presence of an agency relationship, 624 So.2d at 567, the trial court had correctly entered a summary judgment for G.E. Capital, the movant. The court commented:
"Although [the lease] is evidence of the lack of an agency relationship between CADO and G.E. Capital, the language of this provision is not conclusive and will not preclude the finding of agency if there is independent evidence of a retained right of control."
624 So.2d at 567.
In my judgment, Tomlinson stands for the proposition that the conclusory recitals of an instrument may constitute support for a movant's summary-judgment motion. I do not believe, however, that it supports the proposition for which it is cited in the main opinioni.e., that the conclusory recitals in an agreement labeling truck drivers as "independent contractors" rather than "employees" amount to the substantial evidence required of a nonmovant.
In the present case, D & G Trucking submitted, in opposition to Liberty Mutual's summary-judgment motion, only the conclusory recitals of its contract purporting to change the status of the truck drivers from employees to independent contractors. D & G Trucking submitted "no independent, substantial evidence" that the actual working relationship between the drivers and D & G Trucking had changed. Instead, the four right-of-control factors applied in Ex parte Curry, 607 So.2d 230 (Ala.1992), existed to the same extent after the drivers' supposed change of status to independent contractors as they had existed before the change.
In Ex parte Curry, our supreme court held that "no reasonable view of the evidence support[ed] the trial court's judgment, and that [the driver] was, in fact, an employee of [the trucking company] under the Workmen's Compensation Act." 607 So.2d at 233 (emphasis added). Substantial evidence is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989) (emphasis added). Because I do not think that D & G Trucking presented substantial evidence indicating that its drivers were independent contractors, I believe this court can and should direct the trial court to enter a summary judgment in favor of Liberty Mutual.
MURDOCK, Judge, concurring in part and dissenting in part.
I concur in the reversal of the summary judgment in favor of D & G Trucking, Inc.
As to Liberty Mutual's motion for a summary judgment, I do not fully agree with the analysis of Tomlinson v. G.E. Capital Dealer Distributor Finance, Inc., 624 So.2d 565 (Ala.1993), set out in Presiding Judge Crawley's special writing. I do, however, agree with Presiding Judge Crawley's basic premise that the record does not contain substantial evidence, i.e., evidence that could reasonably be viewed as supporting the conclusion, that D & G's drivers truly were independent contractors. Therefore, like Presiding Judge Crawley, I too dissent from the main opinion's decision to deny Liberty Mutual's request to mandate the entry of a summary judgment in its favor on remand.
NOTES
[1] A certified copy of the pertinent insurance policy is indicated to have been an exhibit to Liberty Mutual's motion; however, that exhibit does not appear in the record.
[2] These gross payments, Gray testified, were generally based upon the tonnage of the particular load (which could be as much as 27 tons).
[3] We assume, without deciding, that Liberty Mutual may properly assert error as to the denial of its summary-judgment motion, as it has attempted to do. See Lloyd Noland Found., Inc. v. City of Fairfield Healthcare Auth., 837 So.2d 253, 263 (Ala.2002) (holding that an "appeal from a pretrial final judgment disposing of all claims in the case (as distinguished from a Rule 54(b)[, Ala. R. Civ. P.,] summary judgment disposing of fewer than all claims) entitles [an appellant], for purposes of our review, to raise issues based upon the trial court's . . . denial of [the appellant's own] summary-judgment motions"); but cf. Superskate, Inc. v. Nolen, 641 So.2d 231, 233 (Ala.1994) (indicating that the denial of a motion for a summary judgment is not reviewable after a judgment has been entered after a trial on the merits).