William J. Copeland and Emilea Copeland, parents of Rex Bartly Copeland, appeal from a summary judgment entered in favor of Samford University on their claim against Samford University based on the wrongful death of their son Rex. The complaint, filed against Samford University and William L. Slagle, a former professor at Samford, alleges in part that Samford University negligently hired Slagle; that Samford negligently supervised Slagle; and that Samford is liable under the theory of respondeat superior for the murder of their son, Rex, by Slagle. Slagle, who was convicted of murder pursuant to § 13A-6-2, Ala. Code 1975, is presently serving a life sentence for the crime. See Slagle v. State, 606 So.2d 193
(Ala.Cr.App. 1992).
Following the entry of the summary judgment for Samford, the trial proceeded against Slagle, resulting in a $12,000,000 jury verdict and judgment for the plaintiffs. Although the plaintiffs' notice of appeal named both defendants as appellees, the issues they raised in their brief concern only the defendant Samford; therefore, we consider Samford to be the only appellee. For the following reasons, we affirm the judgment for Samford.
We have written the following in regard to our review of a summary judgment:
 "[A] summary judgment is proper if there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. Rule 56, A.R.Civ.P. In reviewing a summary judgment, this court will apply the same standard applied by the trial court in granting the motion — i.e., this Court will review the record in a light most favorable to the nonmovant and will resolve all reasonable doubts against the movant. Rotham [Rothman] v. Gamma Alpha Chapter of Pi Kappa Alpha Fraternity, 599 So.2d 9 (Ala. 1992) (citing Fincher v. Robinson Brothers Lincoln-Mercury, Inc., 583 So.2d 256 (Ala. 1991)). In determining whether there is a genuine issue of material fact, this Court is limited to a consideration of the factors that were before the trial court when it ruled on the summary judgment motion. Broadmoor Realty, Inc. v. First Nationwide Bank, 568 So.2d 779 (Ala. 1990). However, this Court's reasoning is not limited to that applied by the trial court. Hill v. Talladega College, 502 So.2d 735 (Ala. 1987).
 "Once the moving party makes a prima facie showing that no genuine issue of material fact exists, then the burden of going forward with evidence shifts to the nonmovant — who must demonstrate the existence of a genuine issue of material fact. Grider v. Grider, 555 So.2d 104
(Ala. 1989). . . . This action was filed after June 11, 1987; therefore, the nonmovant, . . . had to carry his burden by presenting 'substantial evidence' that created a genuine issue of material fact, § 12-21-12, Ala. Code 1975. That is, [the nonmovant] had the burden of presenting 'evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment [could] reasonably infer the existence of the fact sought to be proved.' West v. *Page 192 Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)."
Diamond v. Aronov, 621 So.2d 263, 265 (Ala. 1993).
Rex Copeland was a junior at Samford University at the time of his death. He was a member of the debate team and had been a member of that team since entering Samford as a freshman. By all accounts, he was an accomplished debater. William Slagle, his debate coach, had been hired by Samford in September 1987, the year Copeland entered Samford as a freshman. Slagle came to Samford from Mercer University in Macon, Georgia, where he had been employed for approximately 10 years as debate coach. From 1987 until Copeland's death, the debate team at Samford was nationally competitive.
Several months before his death, in preparation for an upcoming debate, Rex had been assigned a particular topic to research for his team. The team held a practice debate on September 21, 1989. Rex's team lost the practice debate and, considering the evidence in a light most favorable to Copeland, one could conclude that both Rex and Slagle were upset. Several days later Rex's body was discovered in his apartment.
In his summary judgment order, the trial court stated, in pertinent part:
 "The facts before the Court show that William L. Slagle was hired by Samford University as a debate coach in 1987. One of his students was Rex Copeland. On September 21, 1989, between 2 and 5 a.m., Rex Copeland was murdered in his apartment. The cause of death was stab wounds. Subsequent to that date, William L. Slagle was indicted and convicted of the intentional murder of Rex Copeland. He is currently serving a life sentence in the state penal system of Alabama.
 "The Plaintiff[s], in [their] amended complaint, count four, allege that William L. Slagle while acting within the line and scope of his authority murdered Rex Copeland. Count five alleges that Samford University breached its duty by negligently failing to supervise William L. Slagle. Count six of the second amended complaint alleges that Samford University had a duty to Rex Bartley Copeland and his parents to fully investigate the background of Slagle to determine his fitness to fulfill the duties of debate coach for Samford University. The Plaintiff[s] further allege that Samford University breached that duty by negligently failing to investigate the background of William L. Slagle.
 "The court has reviewed Samford University's motion for summary judgment, [its] brief in support of [that motion,] the entire case file, the amendment to the motion for summary judgment with excerpts [from] the faculty handbook, excerpts [from] depositions of Dr. Thomas E. Corts, Dr. Harold L. Hunt and . . . Dr. William E. Hull, Samford University's answers to interrogatories, Slagle's curriculum vitae, the transcript from West Texas State University, and the death certificate for Rex Bartley Copeland.
 "The court has also reviewed the affidavits of James Glasgow, Lamar Miller, Mike Kelly, James Chester Gibson, Allegra Jordon Young, and Amanda Carole Hiley. The court strikes the conclusions, the hearsay and all of the opinions which the witnesses were not qualified to express in these affidavits.
 "At the [Plaintiffs'] request the court considered additional excerpts [from] the depositions of Dr. Thomas E. Corts, Dr. Harold L. Hunt, Dr. William E. Hull, William Jimmy Copeland, William Lee Slagle and George Coulter.
 "The first issue raised by the Plaintiff[s] is whether . . . Mr. Slagle was acting within the line and scope of his employment when he murdered [Rex] Copeland.
 "In the case of Wells v. Henderson Land Lumber Co., 200 Ala. 22 [262], 76 So. 28 (1917), the Supreme Court, quoting from Gilliam v. South N.A.R.R., 70 Ala. 268, 270 (1881), declared:
 " 'If the agent, while acting within the range of the authority of his employment, do an act injurious to another, either through negligence, wantonness, or intention, then, for such abuse of the authority conferred upon him, or implied in his employment, the master or employer is responsible in damages to the *Page 193 
person thus injured. But, if the agent go beyond the range of his employment or duties, and of his own will do an unlawful act injurious to another, the agent is liable, but the master or employer is not.'
 "The doctrine of the Gilliam case was followed in Goodloe v. Memphis C.R.R., 107 Ala. 233, 240, 18 So. 166, 167, 29 L.R.A. 729, 54 A.St.Rep. 67, [(1895),] when the Supreme Court said:
 " 'It is said, on the point under consideration, that the rule of the responsibility of the master for the acts of his servant, 'does not apply simply from the circumstance that at the time when the injury is inflicted the person inflicting it was in the employment of another; but that, in order to make the master liable, the act inflicting the injury must have been done in pursuance of an expressed or implied authority to do it. That is, it must be an act which is fairly incident to the employment; in other words an act which the master has set in motion.'. . . 'And generally, where the injury results from the execution of the employment, the master is liable.' "
 "Therefore, the issue to be determined here is whether . . . the act committed by Slagle was done while acting within the line and scope of his employment. There are generally three tests to determine whether . . . one is acting within the line and scope of his employment and whether . . . the employer is liable for the acts of the servant. Where there is a slight deviation from the master's business the court may determine as a matter of law that the servant was within the line and scope of the master's business. If the servant has [made] a radical deviation wholly for personal motives or to gratify his personal objectives or desires that is a marked and unusual deviation then the master would not be liable [,] as a matter of law. Cases that fall in between these two boundaries call for the finder of fact to determine the issue. Hendley v. Springhill Memorial Hospital, 575 So.2d 547 (Ala. 1990).
 "The court finds from the evidence in this case that the actions of Slagle were not in the pursuance of the business of Samford University and that there was a radical deviation or departure from the authority given to him by Samford University.
 "The court concludes that the heinous act of murdering another was outside the line and scope of the duties to be performed by him for Samford University and [was] a deviation from the purpose of his employment.
 "Therefore, the court finds as a matter of law that there is no genuine issue of any material fact and that Samford University is entitled to a judgment as a matter of law on the claims based on respondeat superior.
 "The other issue is whether . . . Samford University is liable to the Plaintiff based on the theory [that] it negligently hired or negligently supervised Slagle.
 "The court has been unable to find any cases in Alabama that are directly on point with the fact situation here which speak to the issue of negligent hiring and negligent supervision. The court agrees with the contention raised in the brief filed by Samford University that the issue for this court to determine is whether . . . it was foreseeable that Slagle would commit a murder while working for Samford University. The court has reviewed the decision of Moye v. A.G. Gaston Motels, Inc., 499 So.2d 1368 (Ala. 1986), and numerous other cases cited to the court on the question of foreseeability. The court concludes that . . . there is [no] substantial evidence to support the contention that Samford University was negligent in the hiring or supervising of Slagle. From the evidence presented, it was not foreseeable that Slagle would have committed a criminal act such as murder. The court reviewed the excerpts from the depositions and affidavits and from that evidence could not find substantial evidence that would have put Samford University on notice that Slagle would commit the heinous act of murdering Rex Copeland.
 "The court concludes as a matter of law that there is no genuine issue as to any material fact concerning the issue of *Page 194 
whether . . . Samford was negligent in hiring or supervising Mr. Slagle. The court therefore enters a judgment for the Defendant, Samford University, on said claims."
C.R. 811-16.
The plaintiffs contend that the trial court erred in entering the summary judgment while, they say, crucial discovery was pending. The record indicates that this case was placed on the "administrative docket" in February 1992 in order to allow Slagle to appeal his murder conviction before this civil action was tried. In Slagle's criminal case, this Court denied his petition for certiorari review on October 23, 1992. The Copelands then moved that this civil case be removed from the administrative docket and placed on the active docket; on November 30, 1993, the trial was set for May 2, 1994. Samford moved for a summary judgment on April 11, 1994, and a hearing was set on its motion for April 22. The plaintiffs then moved for an order to obtain deposition testimony from Slagle; the motion was granted on April 13, 1994. On April 18, the plaintiffs filed a "motion to extend time for filing affidavits and depositions in opposition to Defendants' Motion for summary judgment or in the alternative, motion to continue." That motion stated in pertinent part:
 "1. Defendants have heretofore filed a Motion for Summary Judgment which is presently set to be heard at 3:00 p.m. on the 22nd day of April, 1994. Said motion was served upon the Plaintiffs on April 11, 1994.
 "2. The Plaintiffs have obtained statements from various witnesses which, when obtained in the form of affidavits, will establish material questions of fact to counter the Defendants' motion.
 "3. The persons from whom these affidavits must be obtained are not within the jurisdiction of the State of Alabama. The affidavits must be obtained from such faraway places as Oregon, Massachusetts, Georgia, Minnesota, and other such distant locations.
 "4. The Plaintiffs will be severely prejudiced in [their] efforts to resist the Defendants' Motion for Summary Judgment without these affidavits.
 "5. The deposition of the Defendant, William Lee Slagle, is scheduled to be taken on the morning of April 19, 1994. Plaintiffs anticipate that the deposition of William Lee Slagle will be offered in opposition to the Defendants' motion. The court reporter will require a reasonable opportunity to prepare the deposition for filing."
C.R. 345-46. That motion was denied. On April 19, 1994, Slagle, on the advice of his attorney, refused to answer most of the questions propounded to him.[1] The plaintiffs then moved for sanctions, requesting, in the alternative, that the hearing on the motion for summary judgment be continued until disposition of Slagle's pending habeas corpus petition or until Slagle could be deposed. The trial judge did not rule on the motion. The court held a hearing on the summary judgment motion on April 22, and the trial court informed the parties by telephone on April 29 that Samford's motion for summary judgment would be granted. The plaintiffs' brief in opposition to the motion for summary judgment did not address their earlier argument that Slagle's deposition testimony constituted crucial discovery. The court signed the summary judgment order on May 2, 1994. The plaintiffs then filed a motion to alter, amend, or vacate the judgment for Samford University. Again, they did not argue that crucial discovery had been pending when the motion was granted.
" '[C]ontinuances are not favored and . . . a trial court's denial of a motion for continuance will be upset only when a palpable or gross abuse of discretion has been shown.'Johnson Publishing Co. v. Davis, 271 Ala. 474, 496,124 So.2d 441, 459 (1960)." Scullin v. Cameron, 518 So.2d 695, 698 (Ala. 1987). With regard to a court's entering a summary judgment while allegedly crucial discovery is pending, we have said:
 "The mere pendency of discovery does not bar summary judgment. If the trial court from the evidence before it, or the appellate court from the record, can ascertain that the matter subject to production *Page 195 
was crucial to the non-moving party's case (Parrish v. Board of Commissioners of Alabama State Bar, 533 F.2d 942 (5th Cir. 1976)) or that the answers to the interrogatories were crucial to the non-moving party's case (Noble v. McManus, 504 So.2d 248 (Ala. 1987)), then it is error for the trial court to grant summary judgment before the items have been produced or the answers given. However, the burden of showing that these items are crucial is upon the non-moving party. He can do so by complying with Rule 56(f), Ala.R.Civ.P., Water View Developments, Inc. v. Eureka, Inc., 512 So.2d 916 (Ala. 1987). Rule 56(f) provides: 'Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.' A pending motion to compel production (Parrish, supra) and a motion to compel answers to interrogatories, which has been granted (Noble, supra) when the evidence before the court clearly shows that the evidence sought is crucial to the non-moving party's case, have been held sufficient compliance with Rule 56(f). However, when no such crucial evidence would be supplied by the production or by the answers to the interrogatories, it is not error for the trial court to grant summary judgment with discovery pending. Wallace v. Brownell Pontiac-GMC Co., 703 F.2d 525 (11th Cir. 1983); Noble v. McManus, supra. In Wallace, Judge Kravitch noted: 'Most, if not all, cases involving a Rule 56(f) issue will be factually dissimilar. For this very reason, a blanket rule would be inappropriate.' 703 F.2d at 528. The burden is upon the non-moving party to comply with Rule 56(f) or to prove that the matter sought by discovery is or may be crucial to the non-moving party's case."
Reeves v. Porter, 521 So.2d 963, 965 (Ala. 1988). See alsoDiamond v. Aronov, 621 So.2d 263, 265-66 (Ala. 1993). The plaintiffs argue that Slagle's deposition testimony is crucial in this case; however, we note that this case had been taken off the administrative docket at the request of the plaintiffs, with a May trial date set. The record does not show that the plaintiffs made any attempt to depose Slagle before April 13, 1994. Furthermore, the Copelands did not address their crucial discovery argument in their brief in opposition to the motion for summary judgment or in their motion to vacate that judgment. Assuming that this issue is even preserved for our review, in light of these facts we conclude that the judge's refusal to grant a continuance based on pending discovery was not error.
The Copelands contend that Slagle was acting within the line and scope of his employment when he murdered their son Rex. The question here is whether, at the time of the murder, Slagle was on Samford's business when he went to Copeland's apartment. If, as the Copelands argue, Slagle went to Rex's apartment to discuss Rex's performance during the practice debate, was there a deviation from his master's business thereafter? The trial court considered the murder to be a major deviation from the master's business, as a matter of law, and granted Samford's motion for summary judgment.
In opposition to the motion for summary judgment, the plaintiffs offered the testimony of Allegra Jordan, Scott Barber, and Steven Scott given during Slagle's criminal trial, along with a letter written by Slagle before he was arrested; the letter also had been put in evidence at Slagle's trial. Although the parties had stipulated as to the authenticity of the criminal trial record, Samford objected to the admission of this evidence in opposition to its motion for summary judgment.
We note that Samford was not a party to the criminal trial against Slagle. While the plaintiffs urge this Court to adopt the Federal rule set out in United States v. O'Connell,890 F.2d 563 (1st Cir. 1989) — that testimony from previous adversarial proceedings should be admitted for consideration on motions for summary judgment — we decline to do so in this case. The plaintiffs admitted in their motion to vacate the summary judgment that they could easily have obtained the affidavit *Page 196 
testimony of at least two of the persons whose prior sworn testimony was offered in opposition to the motion for summary judgment. C.R. at 819. In addition, as we have previously noted, the plaintiffs did not attempt to depose Slagle until a few days before the hearing on the motion for summary judgment. The trial court was correct in striking the evidence.
Next, the Copelands alleged that Samford had negligently hired Slagle as its debate coach and thereafter had negligently supervised him. The record shows that the Copelands did not present substantial evidence that Samford should have, or that it could have, foreseen that Slagle would or might commit the murder.
Finally, the Copelands contend that Samford did not file a narrative statement with its motion for summary judgment, as required by Rule 56(c). The Copelands made no objection on this basis at any time before the court ruled on the motion for summary judgment; therefore, that issue was not preserved for review.
The summary judgment for Samford University is affirmed.
AFFIRMED.
HOOPER, C.J., and MADDOX, SHORES, and KENNEDY, JJ., concur.
[1] At that time, Slagle had a petition for writ of habeas corpus pending.