730 So.2d 203 (1998)
Ex parte Emmette L. BARRAN III; Ex parte Kappa Alpha Order, etc., et al.; and Ex parte Duncan Morris.
(Re Jason Jones v. Kappa Alpha Order, Inc., et al.).
1970679, 1970684 and 1970687.
Supreme Court of Alabama.
December 4, 1998.
*204 Robert G. Poole of Whittelsey & Whittelsey, P.C., Opelika, for petitioner Emmette L. Barran III.
Randall Morgan and Doy Leale McCall III of Hill, Hill, Carter, Franco, Cole & Black, P.C., Montgomery, for petitioner Kappa Alpha Order-Nu Chapter.
James A. Rives and Joana S. Ellis of Ball, Ball, Matthews & Novak, P.A., Montgomery, for petitioner Duncan Morris.
April A. England and J.L. Chestnut, Jr., of Chestnut, Sanders, Sanders & Pettaway, P.C., Selma, for respondent.
SEE, Justice.
Jason Jones sued Kappa Alpha Order, Inc. (the "national organization"); Kappa Alpha Order, Inc.Nu Chapter at Auburn University (the "local chapter," or "KA"); and several individual members of KA, alleging, among other things, negligent and wanton hazing in violation of Ala.Code 1975, § 16-1-23, and assault and battery. The trial court granted the defendants' motions for summary judgment on all claims except the assault-and-battery claims against two of the individual members of KA. The trial court made its summary judgment final pursuant to Rule 54(b), Ala. R. Civ. P. Jones Appealed the summary judgment only as it related to his negligence claims. The Court of Civil Appeals affirmed the trial court's summary judgment as to the national organization, but reversed it as to KA and its individual members. The Court of Civil Appeals held that a violation of the criminal-hazing statute constituted negligence per se and common law negligence, and that a jury question existed as to whether Jones voluntarily assumed the risks of hazing. See Jones v. Kappa Alpha Order, Inc., 730 So.2d 197 (Ala.Civ.App.1997). We granted KA's and the other defendants' petitions for certiorari review. Because we hold that Jones assumed the risks of hazing, we reverse and remand.

I.
Viewed in the light most favorable to Jason Jones, the nonmovant, the evidence indicates that he enrolled at Auburn University in 1993; that in September 1993, Jones chose to become, and became, a pledge of the KA fraternity; that within two days Jones began to experience hazing by the fraternity members; and that the hazing activities continued over the next academic year, and included: (1) having to dig a ditch and jump into it *205 after it had been filled with water, urine, feces, dinner leftovers, and vomit; (2) receiving paddlings to his buttocks; (3) being pushed and kicked, often into walls, pits, and trash cans; (4) eating such foods as peppers, hot sauce, butter, and "yerks" (a mixture of hot sauce, mayonnaise, butter, beans, and other items); (5) doing chores for the fraternity and its members, such as cleaning the fraternity house and yard, serving as designated driver, and running errands; (6) appearing regularly at 2 a.m. "meetings" during which the pledges would be hazed for a couple of hours; and (7) "running the gauntlet," during which the pledges were pushed, kicked, and hit as they ran down a hallway and down a flight of stairs. The evidence further indicates that, despite all of these hazing incidents, and although he was aware that 20% to 40% of the members of his pledge class had elected to withdraw from the pledge program, Jones continued to participate in the hazing, in the hope of becoming a full member of KA; and that Jones continued as a KA pledge and continued to participate in the hazing until Auburn University suspended him from school for poor academic performance.
In October 1995, Jones sued the national and local KA organizations, and several individual members of KA, alleging negligence and/or wantonness, in violation of Ala.Code 1975, § 16-1-23, assault and battery, negligent supervision, conspiracy, and the tort of outrage. Jones alleged that he had suffered "mental and physical injuries" as a result of the hazing engaged in by KA and its members.[1] The trial court granted a motion for summary judgment in favor of each defendant on each claim except for the assault-and-battery claims against Brad Sauls and Jason Hard, KA members. The trial court held that Jones assumed the risk of hazing because he voluntarily entered the pledge class, voluntarily participated in the hazing activities, and could have withdrawn at any time. The trial court made the summary judgment final pursuant to Rule 54(b), Ala. R. Civ. P.[2]
The Court of Civil Appeals affirmed the summary judgment as to the national organization, but reversed it as to Jones's negligence claims against the local chapter and the individual members of the Auburn fraternity. Jones v. Kappa Alpha Order, Inc., supra. The Court of Civil Appeals stated that no Alabama case had recognized the tort of hazing, but then recognized that tort, based on the doctrine of negligence per se and Ala.Code 1975, § 16-1-23, which makes hazing a criminal misdemeanor, and based on a new interpretation of common-law negligence principles. The Court of Civil Appeals then held that the traditional defense of assumption of the risk did not support a summary judgment because the peer pressure associated with fraternity life placed Jones in a coercive environment and thus prevented him from voluntarily withdrawing from the pledge class.

II.
A summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56, Ala. R. Civ. P.; Vines v. Beloit Corp., 631 So.2d 1003, 1004 (Ala.1994). A defendant relying on the affirmative defense of assumption of the risk bears the burden of presenting substantial evidence indicating that the plaintiff assumed the risk that gave rise to his injury. Superskate, Inc. v. Nolen, 641 So.2d 231, 237 (Ala.1994).
KA and its members assert that Jones assumed the risks of the hazing process because, they argue, he consciously and voluntarily participated in the hazing activities. Jones argues that he did not assume the *206 risks, arguing that his participation was "not necessarily voluntary."
Alabama has long recognized the affirmative defense of assumption of the risk. See, e.g., Edwards v. Southern Ry., 233 Ala. 65, 66, 169 So. 715, 715 (1936); Dunklin v. Hanna, 229 Ala. 242, 243, 156 So. 768, 769 (1934); Louisville & N.R.R. v. Parker, 223 Ala. 626, 635, 138 So. 231, 238 (1931). The general principle of assumption of the risk is that "[a] plaintiff who voluntarily assumes a risk of harm arising from the negligent or reckless conduct of the defendant cannot recover for such harm." Restatement (Second) of Torts § 496A (1965). As Prosser and Keeton explain:
"[Assumption of the risk occurs] where the plaintiff voluntarily enters into some relation with the defendant, with knowledge that the defendant will not protect him against one or more future risks that may arise from the relation. He may then be regarded as tacitly or impliedly consenting to the negligence, and agreeing to take his own chances. Thus, he may accept employment, knowing that he is expected to work with a dangerous horse; or ride in a car with knowledge that the brakes are defective, or the driver incompetent.... [T]he legal result is that the defendant is simply relieved of the duty which would otherwise exist."
Prosser & Keeton, The Law of Torts 481 (5th ed.1984) (footnotes and emphasis omitted).
Assumption of the risk has two subjective elements: (1) the plaintiffs knowledge and appreciation of the risk; and (2) the plaintiffs voluntary exposure to that risk. Driver v. National Security Fire & Casualty Co., 658 So.2d 390, 393 (Ala.1995). Questions of assumption of the risk are often within the province of the jury, but if there is no genuine issue of material fact, that is, if reasonable persons must draw the same conclusion, then whether the plaintiff has assumed the risk becomes a question of law for the court. See Sears v. Waste Processing Equip., Inc., 695 So.2d 51, 53 (Ala.Civ.App.1997) (upholding the trial court's holding that a party had assumed the risk of her injuries, as a matter of law). Thus, in order to find, as a matter of law, that Jones assumed the risk, this Court must determine that reasonable persons would agree that Jones knew and appreciated the risks of hazing and that he voluntarily exposed himself to those risks. Id.
First, KA and its members argue that Jones knew and appreciated the risks inherent in hazing. This Court has previously held that the knowledge-and-awareness element of assumption of the risk was satisfied, as a matter of law, where a worker who was injured when he slipped on ice had known that the ice was present on the floor, but continued working. Harris v. Food Equip. Specialist, Inc., 559 So.2d 1066, 1069 (Ala. 1990). Similarly, in Kemp v. Jackson, 274 Ala. 29, 33, 145 So.2d 187, 191 (1962), this Court held that the knowledge-and-awareness element of the assumption-of-the-risk defense would be satisfied if a person entered, or continued to ride in, a vehicle with knowledge that the door latch was defective and with an appreciation or consciousness of the hazards involved in doing so.
Jones's deposition indicates that before he became a KA pledge he was unfamiliar with the specific hazing practices engaged in at KA, but that the hazing began within two days of his becoming a pledge; that despite the severe and continuing nature of the hazing, Jones remained a pledge and continued to participate in the hazing activities for a full academic year; that Jones knew and appreciated that hazing was both illegal and against school rules; and that he repeatedly helped KA cover up the hazing by lying about its occurrence to school officials, his doctor, and even his own family. Given Jones's early introduction to the practice of hazing and its hazards, and in light of his own admission that he realized that hazing would continue to occur, the trial court correctly determined that reasonable people would conclude that Jones knew of and appreciated the risks of hazing.[3]
*207 Second, in addition to establishing that Jones both knew of and appreciated the risk, KA and the individual defendants argue that Jones voluntarily exposed himself to the hazing. Jones responds by arguing that a coercive environment hampered his free will to the extent that he could not voluntarily choose to leave the fraternity. The Court of Civil Appeals, in reversing the summary judgment as to KA and the individual defendants, stated that it was not clear that Jones voluntarily assumed the risk of hazing, because, that court stated:
"[I]n today's society numerous college students are confronted with the great pressures associated with fraternity life and... compliance with the initiation requirements places the students in a position of functioning in what may be construed as a coercive environment."
Jones, 730 So.2d at 200. With respect to the facts in this case, we disagree.
In Driver, 658 So.2d at 393, this Court stated that the "voluntary" element of assumption of the risk was satisfied where a plaintiff, who was injured in an automobile accident, had put herself in danger by riding in a vehicle operated by someone she knew had been drinking. Similarly, in Skipper v. Shannon, Strobel & Weaver, Inc., 623 So.2d 1072, 1074 (Ala.1993), this Court stated that the "voluntary" element of assumption of the risk was satisfied where a plaintiff who was injured by tripping over a gap in a floor had put herself in danger by working in an area that she knew was undergoing tile repair.
The record indicates that Jones voluntarily chose to continue his participation in the hazing activities. After numerous hazing events, Jones continued to come back for more two o'clock meetings, more paddlings, and more gauntlet runs, and did so for a full academic year. Auburn University officials, in an effort to help him, asked him if he was being subjected to hazing activities, but he chose not to ask the officials to intervene. Jones's parents, likewise acting in an effort to help him, asked him if he was being subjected to hazing activities, but he chose not to ask his parents for help.
Moreover, we are not convinced by Jones's argument that peer pressure created a coercive environment that prevented him from exercising free choice. Jones had reached the age of majority when he enrolled at Auburn University and pledged the KA fraternity. We have previously noted: "College students and fraternity members are not children. Save for very few legal exceptions, they are adult citizens, ready, able, and willing to be responsible for their own actions." Rothman v. Gamma Alpha Chapter of Pi Kappa Alpha Fraternity, 599 So.2d 9, 11 (Ala.1992) (quoting Campbell v. Board of Trustees, 495 N.E.2d 227, 232 (Ind.App. 1986)). Thus, even for college students, the privileges of liberty are wrapped in the obligations of responsibility. See Foremost Insurance Co. v. Parham, 693 So.2d 409, 437-39 (Ala.1997) (See, J., concurring) (discussing the relationship of rights and responsibilities); see, e.g., Flowers v. State, 586 So.2d 978, 990 (Ala.Crim.App.) (affirming a life sentence for a 15-year-old for the commission of a murder), cert. denied, 596 So.2d 954 (Ala. 1991) (table), cert. denied, 504 U.S. 930, 112 S.Ct. 1995, 118 L.Ed.2d 591 (1992).
Jones realized that between 20% and 40% of his fellow pledges voluntarily chose to leave the fraternity and the hazing, but he chose to stay.[4] See Prosser & Keeton, The Law of Torts 491 ("[W]here there is a reasonably safe alternative open, the plaintiffs choice of the dangerous way is a free one, and may amount to assumption of the risk...."). As a responsible adult in the eyes of the law, Jones cannot be heard to argue that peer pressure prevented him from leaving the very hazing activities that, he admits, several of his peers left.[5]
*208 Jones's own deposition testimony indicates that he believed he was free to leave the hazing activities:
"Q: You didn't have to let this [hazing] happen to you, did you?
"A: No.
"Q: And you could have quit at any time?
"A: Yes.
"Q: But yet you chose to go through with what you have described here in your complaint with the aspirations that you were going to become a brother in the Kappa Alpha Order? You were willing to subject yourself to this for the chance to become a member of the brotherhood... were you not?
". . . .
"A: Yes."
We conclude that Jones's participation in the hazing activities was of his own volition. The trial court correctly determined that reasonable people could reach no conclusion other than that Jones voluntarily exposed himself to the hazing.[6]

III.
The trial court correctly entered the summary judgment for the defendants with respect to Jones's negligence claims. Therefore, we reverse that portion of the judgment of the Court of Civil Appeals overturning the summary judgment for the defendants with respect to Jones's negligence claims. We remand the case for an order or proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, HOUSTON, COOK, and LYONS, JJ., concur.
SHORES and KENNEDY, JJ., dissent.
SHORES, Justice, dissenting.
The trial court granted the defendants' motions for summary judgment on claims alleging negligent and wanton hazing in violation of Ala.Code 1975, § 16-1-23. The effect of the main opinion is to affirm the summary judgment. I dissent. I cannot condone a practice that exploits the desire to be admitted to "the fraternity" to the extent it is exploited here. As I understand it, a pledge must be willing to undergo the degrading, disgusting, and, no doubt, health-threatening practices to meet, again, "the fraternity's" high standards for admission. No one should be required to wallow in feces, vomit, urine, and God only knows what else, to gain admission to any "club." The sadness is that so many are willing to do so. I believe the legislature meant to address this practice by enacting § 16-1-23.
KENNEDY, J., concurs.
NOTES
[1] Although Jones's complaint is ambiguous about the exact nature of some of the injuries he incurred as a result of the hazing, Jones does assert at various points in his brief that he accidentally broke his right hand while "running the gauntlet," that he suffered bruised buttocks from one of the paddlings, that he was "emotionally injured," and that he had to give up his dream of becoming a professional golfer because of his hand injuries.
[2] The assault-and-battery claims, including the claim relating to a fight during which Jones broke his left hand, are still pending in the trial court and are not before this Court.
[3] We note that Jones does not argue to this Court that he lacked knowledge or appreciation of the hazing activities.
[4] An examination of Jones's deposition reveals that one pledge who chose to resign from the pledge class received extra hazing when he announced his intentions. However, that pledge was successful in his withdrawal and received no additional hazing once his association with the fraternity ended. Jones does not assert that fear of a similar reprisal was responsible for his decision to remain a pledge. Further, there is no indication that other resigning pledges received extra hazing.
[5] We note that the peer pressure that may accompany an individual's desire to join a voluntary social organization is a far cry from the economic necessity and inequality in bargaining position that have been used to justify determinations that a child cannot assume the risk of a work-related injury where a child-labor law prohibits his employment. See, e.g., Brilliant Coal Co. v. Sparks, 16 Ala.App. 665, 667, 81 So. 185, 187 (1919) (stating that the defense of assumption of the risk cannot be invoked by a mine operator for injuries to an employee under 16 years of age); Boyles v. Hamilton, 235 Cal. App.2d 492, 498, 45 Cal.Rptr. 399(1965) (stating that one who employs a child in violation of a statute should not escape responsibility, by reason of the defenses of assumption of the risk or contributory negligence, for injuries sustained by the child).
[6] Because we conclude that Jones assumed the risks of hazing, as a matter of law, we pretermit discussion of whether Alabama should recognize a new tort of "hazing" based on the doctrine of negligence per se or based on common-law principles of negligence. See Ex parte Gentry, 689 So.2d 916, 920 n. 2 (Ala.1996).