Monica **MOLINARI**, Plaintiff,

v.

**TUSKEGEE UNIVERSITY**
**and Jeannine Bellamy,**
**Defendants.**

**Civil Action No. 3:03cv1020–T.**

United States District Court, M.D. Alabama, Northern Division.

Sept. 20, 2004.

James Edwin Cox, Auburn, AL, for Plaintiff.

Thomas Cowin Knowles, Ball Ball Matthews & Novak PA, Montgomery, AL, for Defendants.

## OPINION

MYRON H. THOMPSON, District Judge.

Plaintiff Monica Molinari filed this personal-injury lawsuit against defendants Tuskegee University and Jeannine Bellamy, a professor in Tuskegee's College of Veterinary Medicine. Molinari claims that, while she was enrolled in the Veterinary Medicine College, Tuskegee and Bellamy negligently and wantonly allowed a cow owned by Tuskegee to kick her. Molinari further claims that the university negligently supervised Bellamy and willfully failed to provide timely and adequate medical treatment after Molinari was kicked. Jurisdiction is proper under 28 U.S.C.A. § 1332 (diversity). This case is before the court on Tuskegee and Bellamy's motion for summary judgment. For the reasons discussed below, the motion will be granted in part and denied in part.

### I. SUMMARY–JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed.R.Civ.P. 56(c). Under Rule 56 of the Federal Rules of Civil Procedure, the party seeking summary judgment must first inform the court of the basis for the motion, and the burden then shifts to the nonmoving party to demonstrate why summary judgment would not be proper. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115–17 (11th Cir.1993) (discussing burden-shifting under Rule 56). The non-moving party must affirmatively set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials in the pleadings. Fed.R.Civ.P. 56(e).

The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## II. FACTUAL BACKGROUND

Viewed in the light most favorable to Molinari, the facts are as follows. In the fall of 2001, Tuskegee owned a herd of cattle that it used for teaching and demonstrative purposes in its College of Veterinary Medicine. The university also owned cattle-handling equipment such as stanchions (metal rods that keep adjacently placed cows separated),[1] head hatches (metal device placed around a cow's head to limit its movement),[2] and a hydraulic chute (metal holding device that lifts to enable the user to perform surgical procedures on the cow while it is in an upright position).

In October 2001, Molinari was a graduate student enrolled in Tuskegee's College of Veterinary Medicine. As part of her coursework, she was a member of a student surgical group instructed by Bellamy. On the morning of October 10, Bellamy administered sedatives to five cows that were selected for the day's surgical lab exercises. Afterwards, Bellamy had each cow placed in a stanchion with its head in a head hatch; no other physical restraints were used.[3]

Later that afternoon, Molinari's surgical group entered the surgical lab area and was allotted a cow on which to perform the assigned surgical procedure. Shortly after class began, Bellamy was called to Molinari's group because the assigned cow was resisting the surgical procedure; Bellamy administered a second dose of sedatives to the cow. Sometime thereafter, Bellamy was again called to Molinari's surgical group to aid a student who was having trouble giving the cow an injection. On a third occasion, Bellamy was called to Molinari's group because the cow was again resisting the procedure; Bellamy performed a 'tail crank' (that is, the flipping of the cow's tail onto its back to encourage the cow to stand still) to calm the cow down.[4] While performing the tail crank, Bellamy noticed that the cow had previously suffered a spinal fracture. Bellamy instructed the students in the group not to perform the surgical procedure at the cow's spinal level; she demonstrated a

---

1. Defendants' Brief in Support of Motion for Summary Judgment (Doc. no. 28), exhibit 1, Bellamy affidavit, p. 3.

2. *Id.,* exhibit 2, Storrs affidavit, p. 2.

3. *Id.,* exhibit 1, Bellamy affidavit, p. 2.

4. *Id.,* p. 3.

modified surgical procedure and departed to supervise other students in the class. Later, while attempting to perform the assigned surgical exercise, Molinari was kicked by the cow.[5]

## III. DISCUSSION

In their summary-judgment motion, Tuskegee and Bellamy raise two groups of arguments. First, with regard to Molinari's negligence and wantonness claims against both Tuskegee and Bellamy, the university and Bellamy argue that they are not liable because: (1) Molinari has failed to present substantial evidence of negligent or wanton misconduct; and (2) Molinari assumed the risk that she might be injured when she attempted to perform the surgical procedure. Second, with regard to Molinari's negligent-supervision and wilful-failure-to-provide-medical-treatment claims against Tuskegee exclusively, the university argues that it is not liable because: (1) Molinari has failed to present substantial evidence that the university negligently supervised Bellamy; and (2) the university had no legal duty to provide Molinari with medical treatment after she was kicked, or, assuming it had, Molinari has failed to present substantial evidence that the university wilfully failed to provide medical treatment. The court will address each of these groups of arguments in turn.

### A. Molinari's Claims against Tuskegee and Bellamy

#### 1. Negligence and Wantonness Claims

██ Tuskegee and Bellamy argue that Molinari has failed to present substantial

evidence that they acted negligently or wantonly. Under Alabama law, a plaintiff who is injured by a domesticated animal may recover from the animal's owner if (1) the owner had prior knowledge of the animal's vicious propensity and (2) the owner negligently or wantonly failed to exercise reasonable care to prevent foreseeable harm to the plaintiff.[6] *Humphries v. Rice,* 600 So.2d 975, 978 (Ala.1992).

██ With regard to the first element (an owner's knowledge of the animal's vicious propensity), a plaintiff is not required to present evidence that the owner actually knew, prior to the plaintiff's injury, that the animal was dangerous or had previously committed dangerous acts, *Humphries,* 600 So.2d at 977; instead, while actual knowledge will, of course, suffice, constructive knowledge is sufficient as well. "[A]ll that the law requires … is knowledge of facts from which [the owner] can infer that the animal is likely to commit an act of the kind complained of." *Id.* For example, an owner is "charged with knowledge of the propensities of the breed of animal he or she owns." *Id.* at 978. Thus, "evidence of a domestic animal's 'vicious traits' is unnecessary when that animal has acted in accordance with its natural tendencies. Such action is reasonably foreseeable and, therefore, requires preventive control of the animal." *Id.* (quoting *Coley v. Hendrix,* 508 So.2d 216, 217 (Ala.1987) (Jones, J., dissenting)).

██ With regard to the second element (the owner's negligent or wanton failure to

---

5. *Id.,* pp. 2–4.

6. Alabama courts do not define vicious propensity as solely ferocious or malicious animal conduct. Instead, "a vicious propensity is a propensity or tendency of an animal to do any act that might endanger the safety of the persons and property of others in a given situation. Although an animal is actuated solely by mischievousness or playfulness, rather than maliciousness or ferociousness, yet, if it has a tendency to do a dangerous or harmful act, it has a vicious propensity within the meaning of the rule." *Owen v. Hampson,* 258 Ala. 228, 232, 62 So.2d 245 (Ala.1952) (citation omitted).

prevent the plaintiff's harm), it is true that the degree of care owed is not etched in absolute terms but "depend[s] upon the kind and character of the particular animal concerned, the circumstances in which it is placed, and the purposes for which it is employed or kept." *Humphries,* 600 So.2d at 978 (citation omitted). Generally, if the claim is for negligence, then the plaintiff must present evidence that the owner failed to exercise reasonable care to prevent the plaintiff's foreseeable harm. *Id.* By contrast, wanton misconduct is a more egregious tort; the plaintiff must present evidence that the owner consciously disregarded the safety or rights of others. 1975 Ala.Code § 6–11–20(b)(3); *see also Alfa Mut. Ins. Co. v. Roush,* 723 So.2d 1250, 1256 (Ala.1998) ("[T]he statutory definition of wantonness [i]s followed by this Court.").

██ There is substantial evidence that Tuskegee and Bellamy knew the cow possessed a vicious propensity but negligently or wantonly failed to exercise due care. First, Bellamy's own affidavit provides evidence of actual knowledge. On the day that she was kicked, students in Molinari's surgical group summoned Bellamy on three separate occasions because the cow was moving about and resisting the surgical procedure, and Bellamy twice attempted to sedate the cow. Even after the second dose of sedatives, Bellamy performed a tail crank in another attempt to calm the cow down. Because this case is before the court on Tuskegee and Bellamy's motion for summary, all reasonable inferences are taken in favor of Molinari. Evidence presented to the court supports the conclusion that, over the course of the students' repeated calls for assistance with

the cow, Bellamy already had "knowledge of facts from which [s]he c[ould] infer that the animal [wa]s likely to commit an act of the kind complained of." *Humphries,* 600 So.2d at 977.

Nevertheless, Tuskegee and Bellamy argue that neither Bellamy nor other university employees ever observed the cow acting aggressively before Molinari was kicked.[7] This argument is particularly perplexing in light of Bellamy's affidavit describing the various methods that she used to calm the cow down before Molinari tried to perform the procedure.[8] However, even if the court believed that the evidence does not suggest that Bellamy actually observed the cow acting aggressively before Molinari was kicked, Bellamy and the university's argument is not dispositive. As discussed above, Molinari need not prove that Tuskegee and Bellamy actually knew of the cow's vicious propensity in order to establish her claim for negligence or wanton ness; Molinari need only demonstrate that they knew or should have known that, as a characteristic common to their breed, cows have the propensity to kick.

Second, aside from Bellamy's affidavit, Molinari has presented substantial other evidence to support her claim that Tuskegee and Bellamy negligently or wantonly failed to exercise due care to prevent her injury. Regarding her claim for negligence, Molinari asserts that the university and Bellmay failed to use a hydraulic chute or leg restraints to restrain the cow adequately for the surgical procedure. Tuskegee and Bellamy respond that, even if a hydraulic chute had been used, "it would not have provided absolute protection to Molinari."[9]

---

7. Defendants' Brief in Support of Motion for Summary Judgment (Doc. no. 28), pp. 8,9.

8. *Id.,* exhibit 1, Bellamy affidavit, pp. 2–4.

9. Defendants' Brief in Support of Motion for Summary Judgment (Doc. no. 28), p. 14.

Tuskegee and Bellamy are mistaken about the duty of care that the law requires. The question is not whether additional restraints would have *absolutely* protected Molinari from harm; Molinari is not required to present evidence that establishes to an empirical certainty how her injury could have been prevented. The question is whether additional restraints would have *reasonably* protected Molinari from harm, such that the university's and Bellamy's failure to use additional restraints amounted to negligence. Because the parties dispute whether additional restraints would have reasonably prevented Molinari's injury, judgment as a matter of law is improper.

To support her claim that Tuskegee and Bellamy wantonly disregarded students' safety, Molinari offers evidence that Bellamy was aware that the cow had previously suffered a spinal fracture but still instructed students to continue with a modified version of the surgical procedure.[10] Bellamy now asserts that the prior spinal injury was merely an 'incidental finding.'[11] Yet, when she discovered the fracture, Bellamy modified the assignment and instructed Molinari's group not to perform the surgery at the spinal level. Given "the particular animal concerned, the circumstances in which it is placed, and the purposes for which it is employed or kept," a triable issue of fact exists as to whether Bellamy consciously disregarded a known risk that the cow, having previously suffered a spinal fracture, would aggressively resist even the modified surgical procedure. *Humphries*, 600 So.2d at 978.

### 2. Assumption–of–Risk Defense

◼ Tuskegee and Bellamy also assert that they are not liable to Molinari because she assumed a known and appreciated risk when she attempted to perform the surgical procedure. Alabama has long recognized assumption of risk as an absolute bar to a plaintiff's recovery for personal injuries. *See, e.g., Edwards v. Southern Ry.,* 233 Ala. 65, 66, 169 So. 715 (Ala.1936); *Dunklin v. Hanna,* 229 Ala. 242, 243, 156 So. 768 (Ala.1934); *Louisville & N.R.R. v. Parker,* 223 Ala. 626, 635, 138 So. 231 (Ala.1931). As a form of contributory negligence, the assumption-of-risk defense is based on the policy that "[a] plaintiff who voluntarily assumes a risk of harm arising from the negligent or reckless conduct of the defendant cannot recover for such harm." *Ex parte Barran,* 730 So.2d 203, 206 (Ala.1998) (quoting Restatement (Second) of Torts § 496A (1965)).

◼ Generally, once a defendant seeking summary judgment informs the court of the basis of the motion, the burden shifts to the plaintiff to present substantial evidence that a genuine and triable issue of fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). By exception, the burden does not shift to the plaintiff where the defendant affirmatively raises the assumption-of-risk defense. Instead, a defendant who moves for summary judgment "bears the burden of presenting substantial evidence indicating that the plaintiff assumed the risk that gave rise to the injury." *Ex parte Barran,* 730 So.2d 203, 205 (Ala.1998); *see also Superskate, Inc. v. Nolen,* 641 So.2d 231, 237 (Ala.1994).

---

**10.** Molinari may pursue her negligence and wanton misconduct claims simultaneously because "[t]he fact that defendant's servant was not guilty of negligence would not preclude a finding by the jury that [s]he was guilty of willful or wanton conduct." *Coleman v.*

*Hamilton Storage Co.,* 235 Ala. 553, 559, 180 So. 553 (1938).

**11.** Defendants' Brief in Support of Motion for Summary Judgment (Doc. no. 28), exhibit 1, Bellamy affidavit, pp. 2–4.

■ To prove Molinari assumed the risk that caused her injury, Tuskegee and Bellamy's evidence must satisfy two elements: (1) Molinari knew and appreciated the danger that the cow was harmful; and (2) Molinari voluntarily consented to bear the risk posed by that danger. *Driver v. National Sec. Fire & Casualty Co.*, 658 So.2d 390, 393 (Ala.1995). For reasons discussed below, the court concludes that Tuskegee and Bellamy have failed to present evidence that Molinari voluntarily assumed a known and appreciated risk.

■ Admittedly, Tuskegee and Bellamy have presented substantial evidence that Molinari knew and appreciated the danger that she might be kicked if the cow was inadequately restrained. The court, here, analyzes the evidence presented to determine what Molinari subjectively knew at the time that the harm presented itself to her. *Ex parte Potmesil*, 785 So.2d 340, 343 (Ala.2000) ("In determining whether assumption of the risk has been proven, the factfinder looks to the plaintiff's state of mind, using a subjective standard—asking whether the plaintiff knew of the risk, not whether he should have known of it."). Prior to enrolling in Tuskegee's College of Veterinary Medicine, Molinari attended California Polytechnic State University in Pomona, California, where she received her undergraduate degree in Animal Science with a Pre–Veterinary Option.[12] During her deposition, Molinari testified that she worked for veterinarians for four summers while she pursued her undergraduate degree.[13] Regarding her previous experience, Molinari was asked:

"Q. While you were at Cal Poly Pomona, ... what type of animals would you have worked around?

"A. Horses, cows, sheep pigs.

"Q. Did any of it involve surgery or anything like that?

"A. The cows, we palpitated them for pregnancy checks."[14]

Regarding the risks associated with working with animals, Molinari was asked:

"Q. Okay. In the lecture part, did they go over ... safety, how to ... protect yourself while working with these type animals?

"A. Yes.

"Q. Can you tell me what they told you about that?

"A. That the animals would be placed in restraints, proper restraining conditions, and ... to look out for ... certain behavior aspects each species possessed. And if you ever felt like you were in harm, not to approach the animal or stay away from the animal."[15]

And, specifically regarding whether she knew and should have appreciated the risk of being kicked by an inadequately restrained cow, Molinari was asked:

"Q. When you were working around horses and cows that are not restrained with an anti-kicker, is there the risk that the horse or cow might kick you?

"A. Yes."[16]

Therefore, based upon Molinari's deposition testimony, Tuskegee and Bellamy have presented substantial evidence that Molinari knew and appreciated the risk that she would be kicked if she attempted to perform a surgical procedure on an inadequately restrained cow.

However, Tuskegee and Bellamy have failed to establish the second element of

---

12. *Id.,* exhibit 4, Molinari deposition, p. 13.

13. *Id.,* p. 22.

14. *Id.* pp. 14–15.

15. *Id.* pp. 15–16.

16. *Id.,* p. 18.

the assumption of risk defense—that Molinari voluntarily consented to bear the risk of harm. The university and Bellamy contend that Molinari could have refused to perform the procedure on a live animal and requested an alternative means, such as a cadaver.[17] Molinari responds that Bellamy threatened to give her a failing grade in the class if she refused to perform the assigned surgical procedure on the cow.[18] It is improper for this court to weigh the truthfulness or credibility of the parties at the summary-judgment stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).[19] Therefore, judgment as a matter of law is improper because Molinari has presented admissible evidence from which the trier of fact could conclude that she did not voluntarily assume the risk of her injury.

### B. Molinari's Claims against Tuskegee

Tuskegee argues that it is entitled to summary judgment on Molinari's negligent-supervision and wilful-failure-to-provide-medical-treatment claims against it exclusively. The university asserts that (1) Molinari has failed to present substantial evidence that it negligently supervised Bellamy and (2) it had no duty to provide medical treatment to Molinari after she was kicked, or, assuming it had, Molinari has failed to present substantial evidence that the university wilfully failed to provide medical treatment to her. The court will address these arguments in turn.

#### 1. Negligent–Supervision Claim

Molinari claims that, as a result of Tuskegee's negligent supervision, Bellamy negligently or wantonly instructed students to perform the surgical procedure while the cow was inadequately restrained.[20] The court finds the case of *Copeland v. Samford Univ.*, 686 So.2d 190 (Ala.1996), instructive. In *Copeland,* parents of the deceased sued his undergraduate university and argued that the university negligently supervised a professor who had murdered their son. 686 So.2d at 193. On appeal, the Alabama Supreme Court affirmed the trial court's grant of summary judgment for the university because "it was not foreseeable that [the professor] would have committed a criminal act such as murder." *Id.*

 Applying the Alabama Supreme Court's reasoning in *Copeland,* this court is of the opinion that the issue here is whether it was foreseeable to Tuskegee that Bellamy would instruct Molinari to perform the surgical procedure while the cow was inadequately restrained. Tuskegee admits that, although it owned a hydraulic chute at the time Molinari was injured, the chute was not used because of "the large number of students involved and the numerous lab procedures to be

---

17. *Id.*, exhibit 1, Bellamy affidavit, p. 4,5.

18. Plaintiff's Opposition to Defendants' Motion for Summary Judgment (Doc. no. 37), exhibit 1, Molinari affidavit, p. 2.

19. Moreover, the court takes heed that "questions of assumption of the risk are usually within the province of the jury." *Pittman v. United Toll Sys., LLC,* 882 So.2d 842, 846 2003 WL 22753451 at *3 (Ala.2003).

20. Because, as discussed above, Molinari has presented substantial evidence of Bellamy's

negligence or wanton misconduct, the court now considers whether she has presented substantial evidence of Tuskegee's negligent supervision. Of course, if the factfinder later determines that Bellamy was not negligent or wanton, Molinari's claim against the university for negligent supervision necessarily fails because "a party alleging negligent supervision ... must prove the underlying wrongful conduct of the defendant's agents." *Univ. Fed. Credit Union v. Grayson,* 878 So.2d 280, 291 (Ala.2003).

performed."[21] Preserving one's economic interests is not necessarily a defense to otherwise tortious conduct; Tuskegee is not absolved of its duty to provide adequate cattle restraints merely because, given its large class enrollment, doing so would have required the purchase of additional equipment. Molinari has presented substantial evidence to support a reasonable inference that, given Tuskegee's failure to provide sufficient cattle-restraining equipment, it was foreseeable that Bellamy would instruct Molinari to perform the assigned surgical procedure while the cow was inadequately restrained. Summary judgment on Molinari's claim for negligent supervision will be denied.

### 2. Wilful–Failure–to–Provide–Medical Treatment Claim

■■■ The court now turns its attention to Tuskegee's conduct after Molinari was kicked. The university argues that summary judgment is appropriate because it had no duty to provide medical treatment to her.[22] "As a general rule, in the absence of some special relation between the parties, the law imposes no duty on one person actively to protect or assist in the preservation of the person or property of another from injury." *Morris v. Merritt Oil Co.*, 686 So.2d 1139, 1145 (Ala.1996) (citation omitted). While recognizing a special-relationship exception to the no-duty-to-assist rule, Alabama tort cases do not explain what constitutes a special relationship within the meaning of the exception. In the absence of Alabama tort law on point, this court looks elsewhere for guidance.

According to Tuskegee, it had no duty to aid Molinari because, "if such a duty existed, then every plaintiff in a rear end colli-

sion case would include another count in his/her complaint in which it was alleged that the defendant failed to call an ambulance immediately after the accident."[23] The university's reasoning squarely contradicts clearly established Alabama law. According to § 32–10–2 of the 1975 Alabama Code:

> The driver of any motor vehicle involved in an accident resulting in injury … shall render to any person injured in such accident reasonable assistance, including the transportation of, or the making of arrangements for the transportation of such person to a physician or hospital for medical or surgical treatment, if it is apparent that such treatment is necessary or if such transportation is requested by the injured person."

Likewise and more broadly, the Restatement (Second) of Torts § 322 (1965) recognizes an actor's duty to aid another who is harmed by his or her conduct:

> "If the actor knows or has reason to know that by his conduct, whether tortious or innocent, he has caused such bodily harm to another as to make him helpless and in danger of further harm, the actor is under a duty to exercise reasonable care to prevent such further harm."

*See also, e.g. Carlisle v. Kanaywer*, 24 Cal.App.3d 587, 592, 101 Cal.Rptr. 246 (1972) ("It is well settled that one whose negligence injures another is bound to render him aid."); *Griner v. Ga. Farm Bureau Mut. Ins. Co.*, 266 Ga.App. 289, 292, 596 S.E.2d 758 (2004) ("The rescue doctrine applies when the defendants' negligent acts or omissions have created a condition or situation which involves imminent and urgent peril to life and property.");

---

21. Defendants' Brief in Support of Motion for Summary Judgment (Doc. no. 28), p. 14.

22. *Id.*, p. 19.

23. *Id.*, pp. 18–19.

*Lerma v. State,* 758 S.W.2d 383, 384 (Tex. App.1988) (the trial court's order to pay restitution was appropriate where appellant failed to stop and render aid after appellant's car collided with the pedestrian victim).

█ Therefore, this court holds that, if confronted with facts in which a defendant's own negligent or wanton conduct created the plaintiff's perilous condition, the Alabama Supreme Court would impute a special relationship between them, such that the defendant would be under a legal duty to render reasonable aid to the plaintiff; the defendant's failure to render reasonable aid would constitute a separate actionable tort. Here, because the trier of fact could find that the university's negligent or wanton conduct created Molinari's perilous condition after she was kicked, it appears that a special relationship existed between them giving rise to the university's duty to render reasonable aid to Molinari's injury.

█ However, this court need not resolve Molinari's wilful-failure-to-provide-medical-treatment claim on the issue of duty. After reviewing the facts in the light most favorable to Molinari, the court concludes that, even assuming Tuskegee had a duty to provide medical treatment to her, Molinari has not presented substantial evidence that the university wilfully failed to do so. During her deposition, Molinari described Bellamy's attitude and conduct after she was kicked, stating that "[Bellamy] was not immediately there"; "she didn't seem concerned or try to get me medical attention"; and Bellamy did not "drive me to the hospital."[24] However, there is no evidence in the record that Bellamy was aware of the extent of Molinari's injuries at the time that she was kicked. Indeed, Molinari testified that, when "[Bellamy] asked me if I was okay, I told her I really didn't know." Molinari also testified that "[Bellamy] asked somebody to get some ice packs."[25]

Even if it could be argued that Bellamy was negligent in responding to Molinari's injury, there is absolutely no evidence that she acted 'wilfully.' A "clear distinction ... has developed in Alabama between 'wanton conduct' and 'willful conduct,'" *Sharit v. Harkins,* 564 So.2d 876, 879 (Ala. 1990):

" 'Wantonness' is the conscious doing of some act or the omission of some duty under knowledge of existing conditions [while] conscious that from the doing of such act or omission of such duty injury will likely or probably result.

" 'Willfulness' is the conscious doing of some act or omission of some duty under knowledge of existing conditions accompanied with a design or purpose to inflict injury. Therefore, in 'wanton conduct' and 'wanton injury' a purpose or intent or design to injure is not an ingredient; and where a person from his knowledge of existing conditions and circumstances is conscious that his conduct will probably result in injury, yet, with reckless indifference or disregard of the natural or probable consequences, but without having an intent or design to injure, he does the act, or fails to act, he would be guilty of wantonness, but not of willfulness.

"But, in 'wilful conduct' and 'wilful injury' a purpose or intent or design to injure is an ingredient; and where a person, with knowledge of the danger or peril to another consciously pursues a course of conduct with a design, intent,

---

**24.** *Id.,* exhibit 4, Molinari deposition, pp. 56–58.

**25.** *Id.,* p. 61.

**1304**

and purpose of inflicting injury, then he is guilty of wilfulness.

"Alabama Pattern Jury Instructions: Civil 29.01 1974."

*Id.* (quoting *Reed v. Brunson,* 527 So.2d 102, 119–120 (Ala.1988)). The record is devoid of evidence that would support the conclusion that Bellamy acted with a purpose or intent or design to injure Molinari, or that, with knowledge of the danger or peril to Molinari, Bellamy consciously pursued a course of conduct with a design, intent, and purpose of inflicting injury on Molinari. Summary judgment on Molinari's wilful-failure-to-provide-medical-treatment claim will be granted.

## IV. CONCLUSION

In sum, Molinari has presented substantial evidence from which a factfinder could conclude that Tuskegee and Bellamy acted negligently or wantonly; and the university and Bellamy have failed to present substantial evidence that Molinari voluntarily assumed a known and appreciated risk that she would be kicked when she attempted the surgical procedure. Therefore, summary judgment will be denied on Molinari's negligence and wantonness claims against both the university and Bellamy.

Molinari has also presented substantial evidence from which a factfinder could conclude that the university negligently supervised Bellamy. Summary judgment on Molinari's negligent-supervision claim against the university will therefore be denied.

However, although the Alabama courts would likely hold that a special relationship existed between Molinari and the university and, therefore, the university had a duty to assist her in getting medical care for her injury, Molinari has failed to present adequate evidence that the university willfully failed to do so. Summary judgment on Molinari's wilful-failure-to-provide-medical-treatment claim will be granted.

An appropriate judgment will be entered.

## JUDGMENT

In accordance with the opinion entered on this date, it is the ORDER, JUDGMENT, and DECREE of the court as follows:

(1) Defendants Tuskegee University and Jeannine Bellamy's motion for summary judgment (Doc. no. 28) is denied as to plaintiff Monica Molinari's negligence and wantonness claims against defendants Tuskegee University and Bellamy and as to her negligent-supervision claim against defendant Tuskegee University.

(2) Said motion is granted as to plaintiff Molinari's wilful-failure-to-provide-medical-treatment claim against defendant Tuskegee University.

(3) Judgment is entered in favor of defendant Tuskegee University and against plaintiff Molinari as to plaintiff Molinari's wilful-failure-to-provide-medical-treatment claim, with plaintiff Molinari taking nothing on said claim against defendant Tuskegee University.

It is further ORDERED that this case will proceed to jury trial on plaintiff Molinari's negligence and wantonness claims against defendants Tuskegee University and Bellamy and her negligent-supervision claim against defendant Tuskegee University